JAMES G. WRIGHT *et al.*

*v.*

LIZZIE H. GAY *et al.*

*Filed at Springfield Sept. 30, 1881—Rehearing denied January Term, 1882.*

1. INFANTS—*when not bound by suit in their names.* Where suit in equity is brought in the names of infants by one as their next friend, without any authority other than being administrator of their father's estate, and the proceeding is adverse to them, instead of being in their interest, the decree rendered may be avoided by such infant parties on bill filed to impeach the same.

2. PAROL EVIDENCE—*to show a deed is a mortgage.* It is well settled in our courts that parol evidence is admissible in equity to show that a deed in form absolute was intended as a mortgage.

3. TRUST—*may be shown by parol.* Where a person at a sale of land becomes the purchaser under the promise to hold for the benefit of the children of the former owner upon being repaid the sum advanced by him, this is sufficient to raise a trust in favor of such children on the ground of fraud, and this may be proved by parol.

4. STATUTE OF FRAUDS—*trust by parol.* Where three brothers furnished money to purchase the land of their sister on judicial sale, for the benefit of her children, and one of the brothers bought the land under this arrangement, taking the deed in his own name, to secure himself and two brothers for the money advanced, the promise to hold in trust for the sister's children being verbal only, and it also appearing that the purchaser had made

and delivered a deed to such children, which was returned to him to get his wife's signature and release of dower, and was retained by him, it was *held*, that a court of equity would compel an execution of the trust by a conveyance to the children of the sister.

WRIT OF ERROR to the Circuit Court of Coles county; the Hon. J. W. WILKIN, Judge, presiding.

The bill in chancery in this case, filed January 21, 1879, by Lizzie H. Gay, Benjamin F. Gay, and Jacob Douglas Gay, minors, by Lizzie H. Gay, their guardian, alleges that complainants are the only children and heirs at law of William Douglas Gay, deceased; that said Gay died seized of the south-east quarter of section 9, in township 12, north of range 7, east of the third principal meridian, in Coles county, in this State; that on January 21, 1878, a bill in chancery was filed in the names of James R. Gay, John T. Gay, and these complainants, Benjamin F. and Jacob Douglas Gay, by James R. Gay, their next friend, as complainants, and making James G., William M., John W. and Mary R. Wright, parties defendant; that upon January 23, 1878, a decree was entered in that cause, finding that James R., John T. and William Douglas Gay, partners, on December 23, 1864, for the sum of $3200, purchased the real estate above described; that the land was purchased for the use of said Wrights, their sister's children; that the Wrights had made lasting improvements on the land, had paid the taxes, and $1400 of the purchase money; that William Douglas Gay had once made a deed of the land to said Wrights, but the same had been returned to him; that said Wrights were entitled to a deed for the land on the payment of $1800,—and ordering that the master in chancery execute a deed to them on payment of that sum, the bill alleging that thereafter the master made a deed to them in pursuance of the decree. The bill charges that James R. Gay had no authority to use complainants' names, or to act as their next friend, and denies the truth of all the findings of the decree, denies any

contract in writing to convey the land to the Wrights, and alleges that if any contract was made, it was void by the Statute of Frauds; alleges that William Douglas Gay paid for the land $5600, no part of which had been paid back to him; that the Wrights did not have or claim to have any title to the land; that as a mere gratuity said Gay allowed said Wrights to remain upon the premises as his tenants by sufferance, and receive the rents and profits; that said decree was procured by fraud; that said proceeding was a scheme gotten up by James R. Gay, and the said Wrights and others, to injure complainants; that on April 8, 1878, said Wrights filed a bill against one William E. Simms for a conveyance of his right and interest in the land, and that Simms afterward executed a quitclaim deed of the land to the Wrights. The bill prayed that the aforesaid decree and master's deed might be set aside and annulled; that the deed from Simms might be declared to inure to the benefit of complainants; that the title to the land might be decreed to be in complainants, and that the defendants herein, who are the Wrights above named, be perpetually enjoined from asserting any title to the land. Answers were filed denying the allegations of the bill, and full proofs taken, and upon final hearing the circuit court decreed as prayed by the bill.

Messrs. CRAIG & CRAIG, for the plaintiffs in error:

The only thing that can be done under a bill of review, is to set aside the former decree, and nothing more. *Burgess* v. *Pope et al.* 92 Ill. 259.

A bill to set aside a decree for fraud must state the decree and the proceedings which led to it, with the circumstances of fraud, in detail, on which it is sought to be impeached, and the evidence to support that allegation must be clear and satisfactory. *Boyden* v. *Reed,* 55 Ill. 459.

Equity holds a person who has not been appointed guardian, responsible, as though he was duly appointed, when he uses

the infant's property, as in this case their property was used to make payments of the purchase money. 2 Story's Eq. sec. 1356.

The uncles of the Wrights undertook to attend to their business, treating them as not qualified to take care of themselves. The circumstances created an equitable wardship. *Jacox* v. *Jacox*, 40 Mich. 480.

When the Gay brothers loaned their money to the natural guardian of plaintiffs in error, it became their money, and where land is purchased with money of one person and the deed taken in the name of another, a trust results in favor of the person whose money is used. *Mathis et al.* v. *Stufflebeam*, 94 Ill. 486; *Cramer* v. *House*, 93 id. 504; *Ward* v. *Armstrong*, 84 id. 156; *Smith* v. *Smith*, 85 id. 190.

That the case is not within the Statute of Frauds, and the trust may be shown by parol evidence, counsel cited *Rann* v. *Rann*, 95 Ill. 438; *Morgan* v. *Clayton*, 61 id. 38; *Campbell* v. *Dearborn*, 109 Mass. 130; *Trotter* v. *Smith*, 59 Ill. 244; *Strong et al.* v. *Shea et al.* 83 id. 576; *Seaman* v. *Cook*, 14 id. 503; 2 Washburne on Real Prop. (3d ed.) 451; *Roller* v. *Spillman*, 13 Wis. $\frac{3}{3}$; *Seimon* v. *Schurck*, 29 N. Y. 612; *Purviance* v. *Holt*, 3 Gilm. 405.

The cases in Illinois in which parol evidence has been received in equity to show that an absolute deed is to secure indebtedness or money loaned, are very numerous: *Delahay* v. *McConnell*, 4 Scam. 157; *Miller* v. *Thomas*, 14 Ill. 428; *Cootes* v. *Woodworth*, 13 id. 654; *Tillson* v. *Moulton*, 23 id. 648; *Smith* v. *Sackett*, 15 id. 528; *Davis* v. *Hopkins*, id. 519; *Bishop* v. *Williams*, 18 id. 101; *DeWolf* v. *Strader*, 26 id. 225; *Ewert* v. *Walling*, 42 id. 453; *Pitts* v. *Cable*, 44 id. 103; *Owen* v. *Blake*, 44 id. 135; *Shrup* v. *Norton*, 48 id. 100; *Sutphen* v. *Cushman*, 35 id. 186; *Rugard* v. *McNeil*, 38 id. 400; *Taintor* v. *Keep*, 43 id. 332; *Parmelee* v. *Lawrence*, 44 id. 405; *Ennor* v. *Thompson*, 46 id 214; *Price* v. *Karnes*, 59 id. 276; *Card* v. *Rising*, 62 id. 14; 80 id. 360; 71 id. 155.

Messrs. D. T. & D. S. McINTYRE, for the defendants in error, made the following among other points in their argument:

Benjamin and Jacob D. Gay are not, in any respect, concluded, or their rights affected, by the decree and proceedings sought to be set aside. An infant could sue by *procheim amy* in the first place only by statute, in England, in cases of necessity. The appointment was preliminary to the bringing of the suit. The suit must be for the benefit of, and not adverse to, the infant. Tyler on Infancy, p. 201, sec. 138; *Fischer* v. *Fischer,* 54 Ill. 231.

A next friend can only claim and pursue the rights of the minor, and is powerless to yield or cede them to others. *Chicago, etc. R. R. Co.* v. *Kennedy,* 70 Ill. 351.

As to the character of evidence that must be adduced in support of a resulting trust: *Enos* v. *Hunter,* 4 Gilm. 218; *Lantry* v. *Lantry,* 51 Ill. 466; *Mahoney* v. *Mahoney,* 65 id. 407; *Cutler* v. *Tuttle,* 4 C. E. Greene, (N. J.) 560; *Boyd* v. *McLean,* 1 Johns. Ch. 591; *Farringer* v. *Ramsey,* 4 Md. Ch. 37; *Nixon's Appeal,* 63 Pa. St. 279; *Baker* v. *Vining,* 30 Me. 126; *Slocum* v. *Marshall,* 2 Wash. C. C. 397; *Wright* v. *King,* Harr. Ch. 12; *Carey* v. *Callon,* 6 B. Mon. 44; *Freeman* v. *Kelley,* 1 Hoff. 90; *Jackson* v. *Moore,* 6 Cow. 706; *Jackson* v. *Bateman,* 2 Wend. 570; Bigelow on Frauds, 108, 109.

Whether a resulting trust arises, see *Perry* v. *McHenry,* 13 Ill. 238; *Stephenson* v. *Thompson,* 13 Ill. 190; *Ficket* v. *Durham,* 109 Mass. 422; *Hilda* v. *Shoop,* 4 Md. 465; *Holmes* v. *Holmes,* 44 Ill. 171; *Nixon's Appeal,* 63 Pa. St. 279; *Botsford* v. *Burr,* 2 Johns. Ch. 405; Bigelow on Frauds, 108, 109.

A subsequent payment of money will not, by relation, attach a trust to the original purchase. *Botsford* v. *Burr,* 2 Johns. Ch. 405; *Jackson* v. *Moore,* 6 Cow. 706; *Truman* v. *Kelley,* 1 Hoff. 90; *White* v. *Carpenter,* 2 Paige, 218; *Pennock* v. *Clough,* 16 Vt. 501; *Page* v. *Page,* 8 N. H. 187; *Conner* v. *Lewis,* 16 Maine, 268; *Foster* v. *The Trustees, etc.* 3 Ala. 302;

1 Leading Cases in Equity, 275; *Tunnard* v. *Little,* 8 C. E. Greene, (N. J.) 264.

This court has repeatedly said, that when a sale is in form absolute, in order to change its character to that of a mortgage, the evidence must clearly show that it was so intended. *Magnusson* v. *Johnson,* 73 Ill. 159; *Pierce* v. *Traver,* 13 Nev. 526; *White* v. *Kershaw,* 4 Cal. 419.

An agreement, to be sufficient to convert an absolute deed into a mortgage, should be mutual,—that is, the grantor should be bound to pay the debt, and the grantee to reconvey, on payment. *Holmes* v. *Grant,* 8 Paige, 243; *Glover* v. *Payne,* 19 Wend. 518; *Robinson* v. *Cropsey,* 2 Edw. Ch. 138.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

The decree of January 23, 1878, in the case of the Gays against the Wrights, as an adjudication of the rights of the minor children, Benjamin and Jacob Douglas Gay, we do not regard as entitled to any consideration. The proof very clearly shows that James R. Gay had no authority or right to bring the suit for them as their next friend. He does not pretend to have had any other than as arose merely from his being administrator of the estate of their deceased father. The proceeding did not purport to be in the interest or for the benefit of the minor children, but it was for the benefit, solely, of the other co-complainants, James R. Gay and John T. Gay, in order to enable them to realize from the land a certain sum of money alleged to have been advanced by them, with William Douglas Gay, as partners, toward the purchase of the land, for the payment of which the land was alleged to stand as security, the title for that purpose having been taken in the name of William Douglas Gay. The interest of the minor children of William Douglas Gay was adverse to, instead of in favor of, the proceeding, and their place in the suit was as defendants, so that they could have been served with process as such, and have had an opportunity to defend.

We should have been satisfied with the decree here had it merely set aside that former decree, and pronounced it of no force as affecting the rights of these minor children. But the bill is not one merely to impeach the former decree, but it alleges the entire right and title to be in the complainants, denies there to be any in defendants, and asks not merely to have that decree and the master's deed thereunder set aside, but to have the quitclaim deed of Simms to the defendants set aside, that the title to the land be decreed to be in the complainants, and that defendants be perpetually enjoined from asserting any title thereto; and upon full proofs taken as to the respective rights of the parties in the land, the court decreed as the bill asked, to the full extent. We have then to inquire further, whether, rejecting the former decree as of any force, the proofs otherwise sustain the decree as to the full rights of the parties.

There is no controversy in regard to the facts. It appears that in 1855 one William E. Simms sold the land to R. H. Wasson, trustee for Mrs. Wright, the mother of the defendants, taking notes for the purchase money, and giving a written contract to convey on payment of the purchase money; that Mrs. Wright and her husband, with the defendants, their children, have been in possession of the land, living on it, and making improvements, ever since; that default having been made in the full payment of the purchase money, one Troutman, to whom Simms had assigned said notes and contract, filed a bill in chancery to subject the land to the payment of the notes, and a decree was rendered for the sale of the land for that purpose, and a sale and deed of it were made by J. R. Cunningham, a commissioner appointed, to William D. Gay, for $5600, as reported by the commissioner, in December, 1864. This sum seems to have been in excess of the amount of the debt due Troutman by some $1300, which Troutman remitted. This is the purchase and title of William D. Gay, under which com-

plainants claim as his heirs. All that William D. Gay paid toward the purchase of the land was some $2200 or $2300, and under the following circumstances: The three Gays,— John T., James R. and William D., brothers of Mrs. Wright,— were partners together, and resided in Kentucky. Prior to the sale there was an agreement made between the three Gays and Mr. Wasson, the trustee for Mrs. Wright, that the Gays would purchase this land, on which the Wrights were residing at the time, for the benefit of the Wright children. The three Gays borrowed the money, some $2200 or $2300, from a sister, Mrs. Bird, they giving their note for it, which John T. and James R. afterward paid. William D. was sent to Illinois to make the purchase for the benefit of the children, and take the title in his own name for the security of the money to the Gays.

There can be no doubt, from the evidence, that such was the transaction in fact, and the only question in the case is the legal one, whether the arrangement for the purchase of the land for the benefit of the defendants, not being in writing, is void under the Statute of Frauds.

It is very well settled, by decisions of this court, that oral evidence is admissible in equity to show that an absolute deed was intended as a mortgage. (*Reigard* v. *McNeil*, 38 Ill. 400, *Ruckman* v. *Atwood*, 71 id. 155, *Strong* v. *Shea*, 83 id. 575, and many other cases.) The money was clearly advanced by the Gays for the purchase of the land for the benefit of their sister's children, the defendants. The uncontradicted testimony of James R. Gay is, "the title was taken in his (William D. Gay's) name, because he was a single man,—was not made to Wrights because we wanted to secure the money we put in it." This shows that the deed to William D. Gay, though absolute in form, was but as a security to secure to the Gays the repayment of the money which they had advanced for the children.

Again, William D. Gay went from Kentucky to Illinois to attend the sale of the land, under an agreement with his two other brothers, to purchase the land for the benefit of their sister's children. Edwin Wright testifies that William D. Gay "did not purchase it (the land) for himself; he purchased it for the benefit of my children, who were also his sister's children. He stated that in the presence of several persons on the day of sale. It was a distinct understanding between him and Troutman before the sale, that he would purchase the land in controversy for the benefit of my children." It would, under such circumstances, be a fraud upon the other two brothers, as well as others, for William D. Gay, or his heirs under him, to set up right in him, and claim to hold the property as his own, as having been purchased for his own benefit absolutely.

In 2 Washburne on Real Property, (3d ed.) p. 451, after discussing the rule under the Statute of Frauds that no trust can be raised by mere agreement, unless in writing, the author adds: "If a grantee obtain a deed by means of promises to hold the land for another, this is sufficient to raise a trust in favor of the latter, on the ground of fraud, and this may be proved by parol." To the like effect is *Roller* v. *Spillman*, 13 Wis. 33, and see *Dennis* v. *McCagg*, 32 Ill. 429.

It further appears that William D. Gay, in his lifetime, did make a deed to the defendants for the land, and sent it to them, and that they had it in their possession some months, and that on the advice of their father it was sent back, because the signature of Gay's wife was not to the deed.

The decree which was rendered in this case must be reversed, and, strictly, complainants would be entitled to a decree setting aside the former decree in the other case, and the master's deed thereunder, in accordance with the view above expressed upon that subject; but as that would be of

no practical benefit to complainants, under the proofs in this case showing defendants' right to the land, we think that in the interest of both parties, and to end litigation, there should be a decree dismissing the bill, and ordering equitably as to costs.

*Decree reversed.*