## John M. Kennedy, Appellant, *v.* John J. McCloskey et al.

*Equity—Party—Corporation.*

Where judgment creditors agree to buy the property of their debtor at a sheriff's sale, and to form a corporation, taking stock therein in proportion to their debts, the corporation so formed is a necessary party defendant in a bill in equity filed by one of the creditors to compel a transfer to him of his proportion of the stock, if it appears that the corporation was formed pending the litigation, and that the stockholders were the identical creditors who had made the agreement with the plaintiff.

*Contract—Variance between contract averred and that proven—Receiver —Corporation—Stock—Practice.*

Where one of several creditors in a judgment confessed to a trustee in their favor by a debtor, avers in a bill in equity that all of the creditors in the judgment agreed to buy in the property of the debtor at sheriff's sale, and to form a corporation and take stock therein in proportion to their respective debts, and the proof shows that the plaintiff was not to receive his proportion of the stock until his coadventurers had been paid fifty per cent of their claims out of the profits, there is no such fatal variance between the contract averred, and that proven, as will defeat plaintiff's right to equitable relief; although the decree, on account of the immaterial variation between the averments and the proof, may not be framed in exact accordance with his prayer.

If none of the stock has been issued and no account of the profits taken, the court will not turn the management of the property over to a receiver until the defendants have been paid the profits equal to fifty per cent of their claims, but will direct that the plaintiff's allotment of stock shall be delivered to the prothonotary, until plaintiff shall apply to have the case referred to a master, to determine whether the profits have equaled the balance of the fifty per cent due to defendants, and if the profits be found by the master to be equal to such sum, then the prothonotary under the direction of the court shall deliver to plaintiff the certificate of stock.

*Trusts and trustees—Resulting trust—Trust ex maleficio—Agreement among creditors to purchase at sale—Statute of frauds.*

Where creditors agree among themselves to purchase the real estate of their debtor, and one of them in pursuance of the agreement refrains from bidding, and tenders his share of the purchase money, a resulting trust arises in his favor which takes the transaction out of the statute of frauds.

Argued Feb. 6, 1895. Appeal, No. 121, Jan. T., 1895, by plaintiff, from decree of C. P. Montgomery Co., Oct. T., 1893,

No. 6, on bill in equity.   Before STERRETT, C. J., GREEN, WILLIAMS, MITCHELL and DEAN, JJ.   Reversed.

Bill in equity to compel a transfer of stock in a corporation.

The names of the parties as they stood upon the record were as follows: John M. Kennedy v. John J. McCloskey, William Johnston, William A. Flanagan, David S. Brown, George L. Schofield, William Brown and Murrill A. Furbush.

The facts are fully stated in the opinion of the Supreme Court.

*Error assigned* was in dismissing bill.

*James M. Beck, Henry M. Tracy* and *William F. Harrity* with him, for appellants.—If the contract differs from that described in the pleadings it will be established and enforced even if there is some variance between the terms described and those proved, provided the variance does not relate to matters of substance: Harris v. Knickerbocker, 5 Wendell, 638.

The tenor of modern decisions has exploded a rigid and technical construction of bills and proceedings in equity: Mayo v. Merchy, 3 Munf. 358; Bispham Equity, sec. 384.

The doctrine of lis pendens is certainly applicable to the Woodstock Mills Company; they were affected with notice and will be bound by any decree made here: Green v. Rick, 22 W. N. C. 321; Murray v. Winter, 1 Johns. C. R. 566.

Every shareholder of the Woodstock Mills Company (and their charter was offered in evidence by defendants' counsel) was a party to the answer filed to this bill.   All of them were joined as parties defendant except Crosby M. Brown, and he came in and defended by making himself a party to and one of the signers of the answer filed.

A trust in personalty is provable by parol, as the statute of frauds only affects trusts in real estate and not the proceeds of the sale: Reed on Stat. of Frauds, sec. 857; Maffitt's Admr. v. Rynd, 69 Pa. 380.

Admitting for the sake of argument that the agreement was for an interest in the real estate, yet it would not come within the statute of frauds and perjuries.

The real estate had been assigned to Andrew Flanagan, as

assignee, for the benefit of the creditors, of whom Kennedy was one, and this sale was being made by the assignee for the creditors, consequently Kennedy at the time, as a creditor of J. Morton Brown & Co., had an interest in this land: Cowperthwaite v. First Nat. Bank, 102 Pa. 397; Beegle v. Wentz, 55 Pa. 369; Boynton v. Housler, 73 Pa. 453.

The class of cases cited in the opinion of the court below, viz: Barnet v. Dougherty, 32 Pa. 371; Kemmil v. Smith, 117 Pa. 183; Kistler's App., 73 Pa. 393, are cases where the plaintiff had no interest in the land, and there was nothing more than a breach of a parol contract, and it came within the statute of frauds.

*Montgomery Evans, Louis M. Childs* and *Henry Freedley* with him, for appellee.—The plaintiff's bill was rightly dismissed because of substantial variance between the contract charged and contract proved: 1 Daniel's Chancery Practice, 860; Boone v. Chiles, 10 Pet. 177; Foster v. Goddard, 1 Black. 506; Piatt v. Vattier, 9 Pet. 405; Harrison v. Nixon, 9 Pet. 483; Thompson's App., 126 Pa. 367; Moria's App., 4 Penny. 398.

The plaintiff's bill was dismissed because the agreement proved by him was a mere voluntary promise to admit him into a partnership in which he had no interest and to which he contributed nothing. He gave no consideration for the promise. It was future and contingent, and neither the time had come nor the contingency happened upon which it was to be executed.

Equity will not decree specific performance of a contract if the consideration be lacking. A mere voluntary agreement is not to be enforced unless it be already executed: 22 A. & E. Ency. 1030; Bodine v. Glading, 21 Pa. 50; Meason v. Kaine, 63 Pa. 335.

The plaintiff's bill was rightly dismissed because the contract alleged by him is within the statute of frauds and perjuries: Barnet v. Dougherty, 32 Pa. 371; Kellum v. Smith, 33 Pa. 158; Jackman v. Ringland, 4 W. & S. 149; Bennett v. Bank, 87 Pa. 382.

Maffitt v. Rynd, 69 Pa. 380, has no application, for the reason that there has been no conversion of the land and subsequent declaration of a trust as to the proceeds.

The plaintiff's bill was rightly dismissed because it does not clearly appear that McCloskey, the agent of the syndicate, agreed to admit Kennedy with the consent of all parties, but on the contrary, some refused to admit him: Henrici v. Davidson, 149 Pa. 323.

The plaintiff's bill was rightly dismissed because he testifies that at the real estate sale he was guilty of fraud in endeavoring to deter bidding, and a plaintiff in equity must come in with clean hands.

An agreement between creditors not to bid at a judicial sale, without the knowledge and consent of the defendant, is contrary to public policy and void: Hay's Est., 159 Pa. 381 ; Barton v. Benson, 126 Pa. 431.

OPINION BY MR. JUSTICE DEAN, October 7, 1895 :

J. Morton Brown & Company owned and operated the Woodstock Mills, a woolen factory in Norristown. On August 3, 1893, being financially embarrassed, they confessed a judgment to William Johnston for $151,847.73, in trust for certain creditors, among them the following, for the sums specified :

John M. Kennedy, $1,000; William Johnston, $3,617.53; C. A. Furbush, $14,199.41 ; William A. Flanagan, $26,058.63 ; M. A. Furbush, $1,800 ; M. A. Furbush, representing the M. A. Furbush Machine Co., $2,974.45 ; George L. Schofield, $250.

Judgment was entered and execution issued same day, and levy made upon all the personal property on the mill premises. The property consisted of raw materials and partly manufactured goods. Afterwards, on the same day, Brown & Company assigned to Andrew Flanagan for benefit of creditors. This assignment included the mill property and other real estate.

The sheriff made sale of the personal property on August 15, 1893, for the price of $7,659.51, to John J. McCloskey, one of defendants, who afterwards sold at a profit. On October 12, 1893, the assignee sold the mill property to the same purchaser for the sum of $600, subject to two mortgages, aggregating $35,000. On October 25, 1893, McCloskey made a declaration of trust, in which he declared he held the mill property in trust for Flanagan, Johnston, M. A. Furbush and George L. Schofield, as their interest might appear, and under their direction

to convey the same to a corporation thereafter to be organized. On 1st of December, 1893, the Woodstock Mills Company was organized, and McCloskey and wife, on same day, for the consideration of $50,000 conveyed the property to it, subject to the mortgages of $35,000. The capital stock of the corporation was stated in the application for charter to be $75,000, in 3750 shares, each share of the par value of $20.00, and that ten per cent, or $7,500 had been paid to the treasurer; and that the subscribers to the stock are :

William A. Flanagan, 2097 shares; William Johnston, 824 shares; David S. Brown, 533 shares; Crosby M. Brown, 75 shares; George L. Schofield, 20 shares; Murrill A. Furbush, 201 shares ; total 3,750 shares.

The articles of association set forth that $25,000 of the subscribed capital is to be paid in cash, and the remaining $50,000 is represented by the Woodstock mill property, subject to the mortgages ; the last named stock to be nonassessable, and to be issued to the parties subscribing, as follows :

William A. Flanagan, 1398 shares; William Johnston, 550 shares; David S. Brown, 355 shares; Crosby M. Brown, 50 shares; George L. Schofield, 12 shares; Murrill A. Furbush, 135 shares ; total, 2500 shares.

While all the stock has been thus allotted, none of it has been issued.

It will be noticed, that while the plaintiff's name appears in the list of beneficiaries in the trust judgment along with Johnston, Furbush, Flanagan and Schofield, it does not appear in the list of those to whom stock is allotted; he says in his bill it ought to be there, and for these reasons:

That he, Flanagan, William Johnston and C. A. Furbush, before the sale of the personal property on 13th of August, 1893, they being among the largest creditors, agreed to form a syndicate to buy in the personal property, and also the real estate, when it should be sold ; that afterwards, but about the date of the sale of the personal property, M. A. Furbush and George L. Schofield were admitted as members, parties to the same operation. That he attended the sale of the personal property, and saw a large quantity of his own wool in the original packages, which he had delivered to the insolvent partners, sold, yet refrained from bidding, although this and other prop-

erty was knocked down at prices greatly below its market value; that he refrained, only because of the agreement made between him and the other creditors; further, that after the sale of the personal property, and before the sale of the real estate, it was again agreed it should be purchased by McCloskey for the syndicate; and the day after the sale, it was further agreed among them a company should be formed with a capital of $80,000, of which he was to have an allotment of stock to the amount of $3,300. He therefore prays for a decree directing said allotment, and for general relief. The defendants having denied all the material averments of the bill, the case was referred to Henry C. Boyer, Esq., as master, to find the facts and suggest decree.

After a full hearing, the master finds, that the real understanding or agreement between the members of the syndicate, as to the terms on which Kennedy should participate, was not in all respects as averred in the bill; that the interest is not correctly averred, nor the time when Kennedy was to come into the enjoyment of it; while all the witnesses on that subject admit there was some sort of agreement by which Kennedy was to participate, no two of them concur as to the exact terms of it, yet some of the same witnesses join in a sworn denial, by their answers, of any agreement at all with Kennedy. The master comes, however, to this conclusion:

" McCloskey testifies that on October 12, 1893, he purchased the mill property as the representative of Murrill A. Furbush, Johnston, Flanagan, Schofield and C. A. Furbush, and that the question of Kennedy's interest was something to be settled on, but that on the 25th of August, 1893, it was agreed by all parties that Kennedy should come into the combination after the others got fifty per cent of their claims out of the personal and real estate; that after that Kennedy was to come in on an equal footing.

" Owing to McCloskey's relations to all the parties, he being in communication with each of them directly, the master is of the opinion that the agreement was as he states it; and the master finds as a fact that the agreement was that Kennedy was to be regarded as a co-adventurer with the other members of the syndicate, and entitled to share in the profits resulting from the purchase of the personal property and of the real estate

upon an equal footing, after the others had realized from the entire adventure fifty per cent of their claims against J. Morton Brown & Company, which amounted to about $47,000 in the aggregate."

The bill avers the agreement was that McCloskey should buy the property for the joint use of all the parties, and hold the same in trust for them; that it was then agreed a stock company with a capital of $80,000 should be formed, in which Kennedy should be allotted $3,300 of stock.

Therefore, there is this variance between the averments of the bill and the fact as found by the master. Kennedy was not to immediately participate in the profits of the syndicate, but only after the others had received fifty cents on the dollar of their claims; these amounted to $47,000; fifty per cent of this, after deducting $26.24, Kennedy's share of the $600 purchase money of the real estate, also their cash contributions to the capital stock, and other disbursements would be $26,250; deducting from this the $17,000 profit already received from the personal property would leave $9,250, yet to be paid them, out of profits of the woolen mill, when Kennedy would be entitled to the delivery of 164 shares of the stock of the Woodstock Mills Company.

The learned judge of the court below dissented from the master's finding of facts and conclusions of law. He was of opinion the Woodstock Mills Company could not be made a party defendant, as suggested by the master, because it was a stranger to any alleged contract or agreement. We think this objection lacks real merit; every shareholder of the company was a party to the answer to the bill, which averred they were about to form a company and take a conveyance of the property; after the bill was filed they did take a conveyance, and organized the Woodstock Mills Company; it was the identical party defendant which assumed a corporate form under a corporate name, pending litigation; equity is not so dull as to permit the substance of an issue to elude its grasp by a mere change of name. We think the suggestion of the master to make the Woodstock Mills Company a party to the decree a proper one, and necessary to the administration of equity between the real parties to the issue, of whom it was one.

As a further reason for dismissing the bill, the court is of

opinion there is a fatal variance between the contract averred by plaintiff and that proven.

The plaintiff averred a contract by which he was to share in the operations of the syndicate, and in consequence he was lured into inaction as an individual for the protection of his own interests; that defendants had thereby largely profited in the past, and would greatly profit in the future; that by the contract he was to share in these profits along with others, in proportion to his debt against the bankrupt firm. The necessary conclusion from his averment is that he was to come immediately into the possession of his proportion. The master finds this last to be a mistake, but every one of the other averments substantially true. The only variance is, Kennedy was not to get his share of stock until his coadventurers had been paid fifty per cent of their claims out of the profits. If the answer of defendants had admitted the facts to be as the master finds, and had only denied that the period for Kennedy's participation had yet arrived, because the profits had not yet reached fifty per cent of their claims, and a statement of an account of profits had sustained the answer in this last particular, plaintiff's bill would, without doubt, have been dismissed at his costs. But, while the proof fails to sustain the bill as to the time plaintiff was to have his stock delivered to him, it amply sustains it in all other particulars; there is, therefore, not such substantial variance as calls for the dismissal of the bill. Pleaders in equity are no longer held to the strict technical rules which formerly were sufficient to control decrees, but often failed to accomplish equity: Bispham's Equity, sec. 384. The undoubted rule is that every averment of the bill necessary to entitle the plaintiff to the relief sought must be stated. The relief sought here was for a decree directing an allotment of stock to plaintiff, in sum of $3,300, on the averment that defendants denied his right thereto, and if the same passed to others he would have no adequate remedy at law. The proof showed plaintiff's right to what he claimed, and from the attitude and denial of defendants that right was in peril. This was sufficient to move the chancellor in his behalf, although the decree might not be framed in exact accordance with his prayer, because of an immaterial variation between the averments of a part of the contract and the proof.

The court below, further, was of opinion the transaction is within the statute of frauds, as his interest rested entirely in parol, and no money had been paid by him. But this overlooks the facts as testified to, and as found by the master, which clearly constituted a resulting trust, and converted defendants into trustees ex maleficio. The plaintiff says he and defendants entered into an agreement to purchase for their benefit the mill plant. Defendants answer specifically, We deny it. He says, in pursuance of the agreement, McCloskey did purchase the plant for their joint benefit; the specific answer of defendants is, We deny it. He says, a joint stock company was to be formed, in which he was to have $3,300 of stock. The specific answer is, We deny it. When the master finds these averments of plaintiff to be true, and that in good part, on the admissions of defendants on the witness stand; and further, that Kennedy, in pursuance of the agreement, refrained from bidding; that he tendered his share of the $600 purchase money on the real estate; took part in the creditors' meeting, and agreed to accept the stock allotment; that Furbush actually made a payment for his account; this established a trust ex maleficio as to Kennedy's interest. Under the agreement entered into between them, Kennedy contributed or tendered his share of the purchase money in the way agreed upon, and the title was taken, McCloskey expressly testifies, by him, for the benefit of all, including Kennedy. As is said in Bigley et al. v. Jones, 114 Pa. 510 : "The presumption is, in the absence of all rebutting circumstances, that one who pays the purchase money of land, intends to become the owner of it, although as a matter of convenience, or through an arrangement of the parties, for collateral purposes, the conveyance may be in the name of another. The same rule applies, if several persons pay the consideration and take the title to one of their number. If the parties contribute unequally, the trust results to each of them in proportion to the amount paid by each." And for this a number of authorities are cited. A resulting trust in this purchase for Kennedy clearly appears from the agreement and conduct of the parties; a trust, too, of which from the facts defendants were fully conscious, and wrongfully refused to execute. Whoever may plead the statute of frauds, surely they cannot.

The findings of facts and conclusions of law by the master are sustained by the evidence and the law, and are therefore approved.

But we do not adopt his decree in full. We do not think it necessary to turn the management of the property over to a receiver, until the defendants have been paid profits equal to fifty per cent of their claims; none of the stock has yet been issued; no full account of the profits, up to the date of filing his report by the master, was taken. He did find their debts amounted to $47,000, that they had made a profit of $17,000 on the sale of personal property; but they had made cash contributions for interest on mortgages and taxes, and paid $600 cash in purchase money, leaving still unpaid them of the fifty per cent $9,250. Whether any profits had been made by the defendants, or the Woodstock Mills Company, other than the $17,000 on the personal property, he did not inquire or determine. We therefore modify the decree suggested by him thus: 1. The proper officers of the said Woodstock Mills Company are hereby directed to mark and allot on the stock book of said company 164 shares of the capital stock to John M. Kennedy. 2. The said officers are directed to issue and deliver a certificate for said 164 shares in his—Kennedy's—name to the prothonotary of the court of common pleas of Montgomery county, to be by him safely kept until the said court directs him to deliver it to said John M. Kennedy. 3. That on application of said John M. Kennedy, now or hereafter, without further pleadings this cause shall be referred to the same master, or in case of his inability to act to some other, to state an account of said Woodstock Mills Company, to determine whether the profits have equaled the sum of $9,250, the balance of the fifty per cent yet due to defendants, and if it be found they equal or exceed said sum, then the said prothonotary, on direction of the court, shall deliver to said Kennedy said certificate; otherwise shall hold the same until other accounting determines that said profits equal or exceed said balance.

Further: Nothing in this decree shall be taken as hindering an amicable settlement of the matters at variance between the parties, or an agreement between them to deliver said certificates to John M. Kennedy, without an account, or the surrender of the same by him to said company.

The decree of the court below is reversed and set aside; the report of the master is confirmed absolutely, and the decree suggested by him as herein modified is adopted. The costs of this appeal to be paid by appellees.