MARY E. HEBRON ET AL. *v.* GEORGE D. KELLY.

CHANCERY COURT.   *Trusts.   Grantee in absolute deed a trustee.*

A will devising certain lands to infant devisees charged the same with the payment of a legacy of $3,000 after a mortgage of $1,400 thereon had been first paid, the aggregate of which sums was much less than the value of the land. The legatee was the intimate friend of the devisees and of their father, and attorney for the latter, who was executor of the estate. In pursuance of a parol agreement made with the devisees and their father, he acquired the ownership of the mortgage debt, and purchased the land at foreclosure sale for much less than its value. The terms of this agreement were that he should hold the title as security for the amount advanced by him in making the purchase, together with the amount of his legacy, in payment of which sums the devisees should deliver to him twenty bales of cotton annually, for a period of five years, which undertaking on their part the devisees fully performed. *Held,* that the legatee held the land in trust, and that the devisees were entitled to relief on their proceeding in equity against his heir and personal representative for a conveyance of the land and

an accounting, etc. *Robinson* v. *Leflore*, 59 Miss., 148; *Barton* v. *Magruder*, 69 Miss., 462, cited.

FROM the chancery court of Adams county.
HON. CLAUDE PINTARD, Chancellor.
The opinion states the case.

*A. G. Shannon*, for appellant.

It was fully shown that G. Malin Davis, deceased, the ancestor of the defendant, George D. Kelly, in foreclosing the mortgage on the Greenfield plantation and purchasing the same, did so under the express agreement that he would hold the title as security for the mortgage debt and his legacy, and he never intended to hold it otherwise. *Anding* v. *Davis*, 38 Miss., 574; *Carter* v. *Burris*, 10 Smed. & M., 527; *Freeman* v. *Wilson*, 51 Miss., 329; *Klein* v. *McNamara*, 54 *Ib.*, 99; *Russell* v. *Southard*, 12 How. (U. S.), 139. His holding began as mortgagee or trustee, and so continued. *Weathersly* v. *Weathersly*, 40 Miss., 456. An absolute sale is often treated as a mortgage. *Heirman & Kahn* v. *Stricklin*, 60 Miss., 234; *Grocery Co.* v. *Leach*, 71 *Ib.*, 961.

*Ernest E. Brown*, for appellees.

In the case of resulting trusts, "the trust must result, if at all, at the time the deed is taken and the legal title vests in the trustee. No oral agreement, and no payments before or after the title is taken, will create a resulting trust, unless the transaction is such, at the moment the title passes, that a trust will result from the transaction itself." Perry on Trusts, sec. 133. It therefore makes no difference what declaration or contract Mr. Davis may have made before or after the purchase, or what payments may have been made after the purchase, no resulting trust is established in favor of complainants, since neither their money or effects were used by Mr. Davis in purchasing either the mortgage or plantation. *Miazza* v. *Yerger*, 53 Miss., 135; Perry on Trusts, secs. 133, 134.

Counsel for appellants cites authorities holding that where one person conveys land to another, and the object of the parties was simply to secure a debt, that the deed, though absolute in form, will be construed to be a mortgage, and argues that a strong circumstance tending to show the conveyance was intended for a mortgage, is the difference between the debt due the grantee and the value of the land. These authorities are without application. Complainants made no conveyance of the plantation to Mr. Davis, nor did he purchase it to secure any debt due him by complainants. Section 1299, code of 1880, and § 4233, code 1892, impliedly approve the exception engrafted by the courts upon the statute of frauds, by providing that where the maker parts with the possession, a deed absolute on its face shall not be construed to be a mortgage. The cases, permitting oral evidence to show that deeds were intended simply as mortgages having no application to the case before the court, unless appellants have proved clearly a resulting trust, it necessarily follows that the decree of the lower court should be affirmed. See *Logan* v. *Johnson*, 72 Miss., 185.

WOODS, C. J., delivered the opinion of the court.

In the year 1879 Mrs. Mary Leggett died, leaving a will by which she devised to the appellants, her nieces, and then minors of tender years, a large part of Greenfield plantation. Greenfield was then incumbered by mortgage for about $1,400, to secure the note of the decedent given to Jefferson College. The will directed the property of the testatrix, real and personal, should be kept together, and that Greenfield be cultivated or leased until said mortgage debt and all other debts of the testatrix herself should be paid off. At the date of the execution of the will, and at the date of the death of the testatrix, neither of the two promissory notes of the testatrix to Jefferson College were due, having each been made March 22, 1879, and due respectively two and three years after date.

By her will the testatrix further directed that after the mort-

gage debt and her own other debts had been paid off, as thereinbefore mentioned, her executor should pay about the sum of three thousand dollars to G. Malin Davis, in settlement of a debt due him (Davis) by the late husband of the testatrix, Dr. H. H. Leggett.

From the death of Mrs. Leggett, in the year 1879, until the death of Thomas H. McCowen, the father of complainants, in January, 1883, the complainants, with their said father, occupied the Greenfield plantation, and after the death of the father the complainants continued for many years to occupy the plantation with their uncle, one A. H. Cook.

In October, 1896, appellants exhibited their bill in the chancery court of Adams county against Stephen Kelly, executor of the will of G. Malin Davis and guardian of George Kelly, a minor, and said minor, George Kelly, individually, seeking to have George Kelly declared the trustee of the legal title to Greenfield, and to require a conveyance to complainants of the same, and for an accounting, etc.

The bill states and charges the facts just stated by us hereinbefore, as to which there is no controversy. The bill then avers that Davis was a warm personal friend of McCowen and of his infant children, these complainants; that Davis was a lawyer of ability, also, and that he was the attorney and legal adviser of their father and of themselves, and that in his ability and integrity the complainants and their father reposed unlimited confidence, and, being himself interested in Greenfield plantation, under Mrs. Leggett's will, the entire management of their, complainants', interests in Greenfield was left entirely in the hands of said Davis, to be managed as he deemed best. The bill charges that Davis advised that the Jefferson College mortgage, then amounting to about $1,600, be allowed to be foreclosed, and that the Greenfield plantation be sold under said mortgage and bought in for complainants, he, Davis, agreeing to advance the money to buy the notes secured by said mortgage for complainants, and to take the notes to himself, in his

own name, as security for the money so advanced, and then to foreclose the mortgage and to lend and advance complainants the money to bid in the plantation at the foreclosure sale, and, to secure himself for such purchase-money and for the $3,000 bequeathed him by Mrs. Leggett's will, Davis was to take the title to the plantation in his own name, because, as is averred, the complainants were minors, and were unable to execute a mortgage, valid in law, to secure the money so to be loaned or advanced. The plantation, according to the averment of the bill, was worth $15,000, a sum far greater than Davis' bequest of $3,000 and the sum due on the mortgage debt. This plan, as charged by the bill, was accepted readily and in perfect confidence by complainants and their father, and, accordingly, Davis filed his bill to the June term, 1882, of Adams chancery court (he having become the purchaser of the two notes secured by the mortgage on the day of the maturity of the last one) to foreclose the mortgage in his own name, and that a decree of sale was then entered in that court. At the said sale Davis had complainants, then minors of tender age, accompany him in person, and so obtained their presence at the sale and created the impression that the land was being bid in for complainants under the said sale, in order to prevent other persons from running the price to be bid up beyond the mortgage debt and the $3,000 bequest to him, and that he did thereby prevent opposition in bidding, when he, Davis, became the purchaser at and for the sum of $2,470.95.

The bill alleges that in the agreement thus to save the plantation for complainants, Davis stipulated that for the money lent and advanced by him to purchase the two notes, and the purchase price of the plantation under the foreclosure sale, he was to receive twenty bales of cotton per annum for five years—in all, one hundred bales—in full payment of all indebtedness held by him against said plantation for money lent and advanced by him for complainants, as well as for the $3,000 bequest, and that complainants and their father, the said Thomas H. Mc-

Cowen, agreed with Davis to pay said cotton, the same being then worth about $50 per bale, aggregating about $5,000.

'The bill then charges that at the December term, 1882, of Adams chancery court, a confirmation of the said foreclosure sale was had, and Davis received a conveyance to the plantation, and that before Davis had advanced and loaned any money to complainants in payment of his bid at the sale, and before confirmation of said sale was had, their father, Thomas H. Mc-Cowen, had actually paid for complainants, to Davis, the first installment of twenty bales of cotton contemplated in their agreement, of the aggregate value of about $1,200; whereby, after such payment, there only remained due on the mortgage debt about $400; and after the death of their father, in January, 1883, the uncle of complainants, the said A. H. Cook, came upon the plantation with and for complainants, and completed the payment of said one hundred bales of cotton under their contract and agreement with Davis. The bill shows that Davis died in the year 1884, and that said George Kelly is his heir and legatee. There are other averments of the bill which need not now be adverted to. The answer of the respondent, it is sufficient to say, denies all the material averments of the bill. On the hearing some evidence was offered which directly supported those charges of the bill on which appellants relied for a favorable decree. That there was, substantially, the agreement between Davis, on the one side, and complainants and their father on the other, as to the lending or advancing of the money necessary to pay off the notes secured by mortgage, and the purchase of the place at foreclosure sale for complainants, as averred in the bill, is quite clearly shown, and especially by the evidence of the witnesses, A. H. Cook and Louisa Roper.

If the testimony of these witnesses can be relied upon (and we have failed to find any reason for at all discrediting it), the agreement to lend and advance the necessary money by Davis, for the purpose of buying in and saving the plantation for the two little girls, and the agreement to repay him in five install-

ments of twenty bales of cotton per annum, and until he has received about the sum of $4,500, may be said to fairly appear to be proved; and the evidence of Cook goes further and shows, or strongly tends to show, that the one hundred bales of cotton were paid to Davis, or his representative, as agreed, but that this cotton did not amount to $4,500 in value is apparent. It is to be noted, too, that the only witnesses who were examined as to the value of Greenfield in 1882, testify that the property was then worth $9,000 or $10,000, while there is no controversy as to the fact that Davis paid, at the foreclosure sale, about $2,400 only.

It appears to us that Davis was the trustee for complainants. About $800, necessary to pay off the mortgage debt of $1,600, was in Davis' hands before the sale was confirmed and before he acquired title. ' This $800 was not the money of Davis, but was the product of cotton raised by the father of complainants on Greenfield, which property had been, in large part, devised by Mrs. Leggett to her little nieces, these complainants. If, however, it be thought that Davis really loaned and advanced the whole amount necessary to make the purchase, and to carry out the agreement between himself and the complainants and their father, the rights of complainants to assert their trust will not be thereby affected. Whether the money, in part, was not that of Davis, or was all that of Davis, on the proofs in the case, would seem to be immaterial. In either case Davis took title in himself as trustee for complainants. See *Robinson* v. *Leflore*, 59 Miss., 148; *Barton* v. *Magruder*, 69 Miss., 462.

*Reversed and remanded.*