[No. 8589. Department Two. October 1, 1910.]

REINHOLD HARRAS *et al.*, *Respondents*, v. GUS HARRAS *et al.*, *Appellants.*[1]

TRUSTS—CONSTRUCTIVE TRUST—ESTABLISHMENT—PAROL EVIDENCE —SUFFICIENCY. To establish a constructive trust by parol, in lands bid in at execution sale, the evidence must be clear, cogent, and convincing, and such a trust is sufficiently established where it appears that the purchaser at the request of a brother, to whom he was indebted, bid in the property, in which his brother had a present interest, at an execution sale for one-half its value, the brother being unable to attend the sale and refraining from securing the bidders, and his testimony being clearly supported by documents and undisputed circumstances and evidence of disinterested witnesses.

[1]Reported in 110 Pac. 1085.

Appeal from a judgment of the superior court for Walla Walla county, Edward C. Mills, Esq., judge *pro tempore*, entered September 23, 1909, upon findings in favor of the plaintiffs, after a trial on the merits before the court without a jury, in an action for specific performance and an accounting. Affirmed.

*Herbert C. Bryson* and *T. P. & C. C. Gose*, for appellants. *Dunphy, Evans & Garrecht*, for respondents.

CROW, J.—This action was commenced by Reinhold Harras and P. N. Hansen against Gus Harras and Anna Harras, his wife, to compel the conveyance of certain land which they allege was held in trust for them by the defendant Gus Harras, and to obtain an accounting. From a decree in their favor, the defendants have appealed.

The trial court in substance found, that between February 23, 1906, and January 18, 1909, the Garden City Packing Company, a corporation, was the owner of, and in the possession of, the land in controversy; that Reinhold Harras was president and general manager of, and the principal stockholder in, the corporation; that upon May 7, 1907, the John Morrell Company, Ltd., a corporation, obtained a judgment against the Garden City Packing Company in the sum of $140.33; that upon July 27, 1907, the land was sold upon execution to satisfy said judgment; that upon June 10, 1907, the First National Bank of Pendleton obtained a judgment against the Garden City Packing Company in the sum of $1,716.41, costs and interest; that upon March 28, 1908, the land was again sold upon execution to satisfy said judgment; that immediately prior to the sale last mentioned Reinhold Harras, by long-distance telephone, requested the defendant Gus Harras, his brother, to purchase the land for the use and benefit of the judgment debtor, the Garden City Packing Company; that Reinhold Harras was then in Pendleton, Oregon, and unable to reach Walla Walla in time to

attend the sale; that Gus Harras agreed to buy the land as requested; that Reinhold Harras, relying on his agreement, desisted from further efforts to find a bidder; that an un-settled account then existed between the brothers Reinhold and Gus; that Gus bid the property in for much less than its actual value; that for many years and until September, 1908, the brothers had a continuous course of dealing with each other, being partners a portion of the time; that Reinhold had also been an agent for Gus a portion of the time; that at the time of the execution sale an involved, complicated, and unsettled account existed between them; that under the instruction of Reinhold, and as trustee for the company, Gus bid in and purchased the property at the execution sale on March 28, 1908; that thereafter he obtained an assignment of the certificate of sale issued on June 27, 1907, when the property was sold to satisfy the John Morrell Company, Ltd., judgment; that upon January 18, 1909, the Garden City Packing Company, for value, sold and transferred its interest to the respondents, Reinhold Harras and P. N. Hansen; that upon July 27, 1907, and at all times since, the Garden City Packing Company and its grantees were, or had been, in possession of the land, exercising dominion and con-trol; that there is a deficiency due Gus Harras upon a judg-ment against Reinhold, obtained since the commencement of this action upon a separate and distinct transaction aside from any of their running accounts; that by reason of un-adjusted running accounts existing prior to the commence-ment of this action there was due Gus Harras $412.80 at the time of the trial; that in addition thereto there was due him $1,897.56 advanced in purchasing the property at exe-cution sale, $150 for purchase of the prior certificate of sale, $129.45 and $56.87 for tax liens discharged and taxes paid, amounting in all to $2,646.68; and that respondents are entitled to an offset against said amount in the sum of $2,225 due them from Gus Harras, leaving the sum of $421.68 still remaining due to Gus from the respondents.

The evidence shows that, at the time Gus agreed to purchase the lands for the use and benefit of the Garden City Packing Company, respondents' assignor, he was indebted to the respondent Reinhold Harras in the sum of $2,225, purchase money for fixtures in a certain meat market in Pendleton, Oregon, sold to him by Reinhold, an item not included in any of the running accounts; that thereafter the Garden City Packing Company, respondents' assignor, became indebted to Gus for the purchase money paid for the land, the former certificate of sale, tax liens, and other expenses, in a sum sufficient to create a net balance of $421.68, independent of the deficiency judgment in favor of Gus, and that Reinhold Harras and P. N. Hansen had succeeded to all the rights of Reinhold and of the Garden City Packing Company. A decree was entered protecting Gus Harras by liens upon the land in the sums found due him, directing a conveyance to respondents subject to such liens, which the respondents were ordered to pay, and awarding the appellant Gus Harras an execution and order of sale in the event of respondents' failure to make such payments.

The findings and decree were vigorously assailed by the appellants, who contend that they are not sustained by the evidence. The record is lengthy. The evidence cannot be stated in detail, but we have carefully considered and weighed it with the result that we conclude the findings of the trial judge must be sustained. From the long and continuous course of dealing which existed between the two brothers, it is manifest that their relations were of a highly confidential character. Reinhold, as president, manager, and principal stockholder of the corporation, had a present and personal interest in the land which it owned. From the evidence we find that the land with the improvements thereon was worth $5,000 or more. Reinhold, being unable to attend the sale, requested Gus, then his debtor, to bid it in for the company. At the time, and independent of their running accounts, we find from the evidence that Gus was indebted to him in the

sum of $2,225 for the purchase price of fixtures in the Pendle-
ton meat market sold to him. Reinhold, after telephoning
Gus, made no further efforts to obtain a bidder, but relied
upon his oral promise. Another party attended the sale at
Reinhold's request but, after conferring with Gus, made no
bid. The corporation and the respondents have since been
in continuous possession in person or by tenant, and made
valuable improvements at their own expense. Gus paid much
less than half of its value for the land, and now claims
ownership. The purpose of this action is to establish a trust
and secure a conveyance. The evidence offered to show the
trust rests in parol.

"In no case will a constructive trust be decreed on account
of the breach of an alleged verbal agreement of the pur-
chaser at a judicial sale to purchase for the benefit of the
judgment debtor, unless the evidence to prove the agreement
is clear and satisfactory." 15 Am. & Eng. Ency. Law (2d
ed.), 1191.

In *Denny v. Holden*, 55 Wash. 22, 103 Pac. 1109, recog-
nizing the rule above stated, we said:

"The appellant seeks to establish a resulting trust by parol
evidence, to show that the respondents, the owners of the legal
title to the property in controversy, hold title to the extent
of an undivided one-half interest in trust for him. In such
case the evidence must be clear, cogent, and convincing be-
fore a trust will be declared. 3 Pomeroy, Eq. Jur. (3d ed.),
1040; 15 Am. & Eng. Ency. Law (2d ed.), p. 1174; *Howland
v. Blake*, 97 U. S. 624, 24 L. Ed. 1027; *Chambers v.
Emery*, 13 Utah 374, 45 Pac. 192; *Rice v. Rigley*, 7 Idaho
115, 61 Pac. 290. The following case also illustrates this
view: *Voorhies v. Hennessy*, 7 Wash. 243, 34 Pac. 931."

If to sustain the alleged trust herein it were necessary for
us to rely upon the unsupported statements of the respond-
ent Reinhold Harras, which are vigorously disputed by the
evidence of Gus Harras, we might not approve the findings of
the trial judge. The credibility of Reinhold Harras has been
bitterly assailed, but we think his evidence, in so far as
it has been accepted by the trial judge, is so clearly sup-

ported and fortified by documents, undisputed circumstances, and the evidence of disinterested witnesses, that the quantum of proof required by the rule above stated appears in the record.

On the law there is no material dispute. The authorities generally hold that, where one person verbally agrees to attend a judicial sale and purchase for the benefit of another who has a present interest in the land to be sold, the promisor will not be permitted to perpetrate a fraud by repudiating his agreement, but will be held a constructive trustee. The courts, with much unanimity, hold that a constructive trust will arise, and the promisor who buys the land at judicial sale will be decreed to hold the same for the benefit of the promisee, where there existed between them a confidential relation aside from that created by the agreement to purchase, where the promisee supplied a part of the purchase money, where the promisee was lulled into inactivity by reason of the promise and was prevented from protecting his rights in the land sold or refrained from doing so, where the promisor was enabled, by reason of his agreement, to secure the land at a price materially below its actual value, or where persons interested in the land under the oral agreement remained in possession thereof and made valuable improvements. All of these conditions are shown to have prevailed in the case at bar, and we regard them as sufficient to sustain the trust declared by the trial court. The appellants themselves, in their opening brief, making citations of authority, well state the law in the following language:

"Circumstances may arise out of the verbal agreement which will make it inequitable or fraudulent for the promisor to refuse to perform the agreement, and in such case a constructive trust will be created. Some of the following conditions and circumstances must be present for a constructive or resulting trust to arise. 1st. Where prospective bidders at a judicial sale, believing that the promisor in the oral agreement was buying for the promisee whose land was being sold to satisfy debts against him, refrained from bidding. *Collins*

*v. Williamson*, 94 Ga. 635, 21 S. E. 140; *Vanbever v. Van-
bever*, 97 Ky. 344, 30 S. W. 983; *Leahey v. Witte*, 123 Mo.
207, 27 S. W. 402; *Phillips v. Hardenburg*, 181 Mo. 463, 80
S. W. 891; *Carter v. Gibson*, 29 Neb. 324, 45 N. W. 634,
26 Am. St. 381; *Woodfin v. Marks*, 104 Tenn. 512, 58 S. W.
227. 2d. Where the promisee in the oral agreement re-
frained from bidding on account of the agreement. *Berlien v.
Bieler*, 96 Mo. 491, 9 S. W. 916; *Boynton v. Housler*, 73 Pa.
St. 453; *Kennedy v. McCloskey*, 170 Pa. 354, 33 Atl. 117;
*Shallcross v. Mawhinny* (Pa.), 7 Atl. 734; *Cutler v. Bab-
cock*, 81 Wis. 195, 51 N. W. 420, 29 Am. St. 882; *Bryan v.
Douds*, 213 Pa. St. 221, 62 Atl. 828, 110 Am. St. 544; 5
Am. & Eng. Ann. Cases, 172. 3d. Where the promisee re-
laxes his efforts to save the property from being sold at
judicial sale. *Arnold v. Cord*, 16 Ind. 177. 4th. Where the
promisee relaxed his efforts to prevent a sale at a sacrifice.
*Leahey v. Witte, supra.* 5th. Where the promisee supplied
part of the purchase money. *Wright v. Gay*, 101 Ill. 233;
*Barnet v. Dougherty*, 32 Pa. St. 371. 6th. Or where the
promisor in the oral agreement bought in the property at a
price greatly below its value. *Phillips v. Hardenburg, supra;
Dickson v. Stewart*, 71 Neb. 424, 98 N. W. 1085, 115 Am. St.
596; *Ryan v. Dox*, 34 N. Y. 307, 90 Am. Dec. 696; *Shall-
cross v. Mawhinny, supra; Hebron v. Kelly*, 75 Miss. 74, 21
South. 799. 7th. Where the promisor and the promisee in
the oral agreement sustained a close confidential relation with
each other such as parent and child. *Pope v. Dapray*, 176 Ill.
478, 52 N. E. 58; or attorney and client. See *Holmes v.
Holmes*, 106 Ga. 858, 33 S. E. 216. And if we are permitted
to comment on the extreme case of mother-in-law and son-in-
law, has been held such confidential relation in Kentucky in
the case of *Stubbins' Adm'r v. Briggs*, 24 Ky. Law 230, 68
S. W. 392; and further, a confidential relation in the case of
cotenants has been held in the case of *Manning v. Hayden*,
5 Sawyer 360, Fed. Cas. No. 9,043; *Allen v. Arkenburgh*, 2
App. Div. 452, 37 N. Y. Supp. 1032; *Peck v. Peck*, 110 N. Y.
64, 17 N. E. 383. For a full treatise, see *Bryan v. Douds*,
*supra*, and extended note."

The judgment is affirmed.

RUDKIN, C. J., DUNBAR, PARKER, and MOUNT, JJ., con-
cur.