[No. 24323. Department One. March 24, 1933.]

HUGH DOOHAN, *Appellant*, v. BEN F. NAUMAN *et al.,*
*Respondents.*[1]

*Q. A. Kaune,* for appellant.

*Raymond D. Ogden, Ward Wm. Roney,* and *W. L.
Brickey,* for respondents.

HOLCOMB, J.—In 1920, appellant purchased from
respondent Nauman and wife, for $1,050, seven chains
of tide lands in Padilla Bay in Skagit county, de-
scribed as chains No. 272 to 278. About 1928, the
land owners of Padilla Bay created a diking district
to reclaim the lands for agricultural purposes. About
July 1, 1930, the diking district was dissolved by pro-
ceedings in the superior court of that county, and
certain money collected as damages from the construc-
tion company was distributed to the land owners. Ap-
pellant was apportioned $137.44 as his part of the
damages. In July, 1930, at the request of appellant,
respondent Nauman procured this money from the
county treasurer for him and remitted it to him. For

[1]Reported in 20 P. (2d) 37.

this, appellant paid Nauman three or four dollars for his trouble in getting the money.

About 1927 or 1928, when the diking project failed, appellant gave respondent Nauman a power of attorney and also a quitclaim deed for the purpose of facilitating a plan Nauman had conceived of developing the diking project. The power of attorney, however, showed that it was granted to three land owners named Hoyt, Wright and Williams. At one of the meetings of the land owners afterwards, in 1928, appellant asked to withdraw the power of attorney and deed, upon which respondent Nauman accused him of treachery and of going over to the opposite faction of property owners. Nauman asserts that this breached the friendly relations existing between appellant and him.

In June, 1930, when the money was paid over to appellant as his damages, his taxes were nearly six years delinquent, but aggregated only about forty dollars. While he had this refund in his possession, Nauman urged appellant to pay his taxes with some of that money and keep his lands. Appellant refused to do so in very emphatic language, and also said he was going to put his money in mines. In June, 1930, Nauman planned to develop an oyster-growing industry on the lands, and on June 28, by letter, asked appellant to call and discuss a plan to develop all the lands, which appellant did, three or four days later.

In August, 1930, appellant testified that he desired to go to Idaho and work in the mines. He then visited the office of respondent Nauman in Seattle to discuss the tax question. He testified that he then had enough money to pay one year's tax, about seven dollars, but that Nauman told him he would have to pay all of them. He had paid, during the previous year, one

year's tax to keep the property from being fore-closed and sold for taxes.

At that time, he asserts respondent Nauman orally agreed to pay the whole six years' taxes to save the same from tax sale and that he would keep appellant advised. There is no written evidence of any such agreement. Appellant admitted on cross-examination that he did not promise to, or did, advance the money to respondent Nauman for that purpose; nor did he agree to reimburse Nauman for such taxes as Nauman might pay out for him, or agree to pay anything to Nauman for his trouble; that he depended upon Nauman's friendship. In answer to questions as to what he thought Nauman would pay those taxes with, he answered, ''Money, probably his own money;'' that he never gave Nauman any money with which to pay the taxes nor hire him to look after them.

Just prior to the departure of appellant for Idaho, about August 25, 1930, he addressed a letter to the treasurer of Skagit county, giving him the new address of appellant, and told him that he expected some money soon. The treasurer of Skagit county testified that, prior to the foreclosure of the certificates of delinquency, he mailed a notice thereof to all property owners; and on October 7, 1930, he mailed a second notice to appellant, advising him that the property would be sold for taxes October 18, 1930. On September 2, 1930, Nauman had mailed to appellant a circular letter written to all the land owners interested in the Padilla Bay project, advising them all to pay their taxes, no exception being made in the case of appellant. Appellant admitted having received that letter prior to the tax sale.

On October 18, 1930, respondent Nauman attended the treasurer's tax sale in Skagit county and bid in the property in question. Both he and respondent

Schulz, who had advanced the money therefor, testified that the money belonged exclusively to her.

Upon receiving the notice of sale mailed to appellant by the treasurer, he wrote two letters, neither of which is dated, one to respondent Nauman at Seattle, the other to the county treasurer of Skagit county, in both of which he stated that he had received notice of treasurer's sale and that he wanted to pay his taxes. In neither of those letters did he make any mention about any promise by respondent Nauman to pay the taxes for appellant or to notify him of the tax sale, although they were written immediately upon receiving notice of the tax sale, which was within ninety days after the time appellant testified he had the oral agreement with Nauman.

A number of letters passing between appellant and respondent Nauman are set out in full in the brief of appellant, none or all of which are sufficient to establish an agreement in writing by respondent Nauman to pay the taxes and take title for appellant. The memorandum decision of the trial judge reads:

"I am unable to find that the evidence presented on behalf of plaintiff is sufficient to maintain his alleged cause of action. Outside of his own testimony the only evidence that raises a suspicion in his behalf is the letter of defendant Nauman, being plaintiff's exhibit 'H,' in which he tells plaintiff 'not to worry,' but this is no stronger in raising a suspicion upon the nature of their agreements, if any at all, than plaintiff's own letters written at the time of greatest interest, in which he failed to even mention that Nauman had agreed to care for his taxes."

That exhibit reads:

"Hugh Doohan,                    Seattle, Wash.
Kellogg, Idaho.                  515 McDowell Bldg.,
Dear Hugh:                       Oct. 25, 30.
"You failed to pay the taxes, thats a cinch, so the Treasurer sold them at 11:30 A. M. Oct. 18th so I was

there and bid them in for the taxes, and have receipts for deeds to same. Do not send the trust deed now as it serves no purpose. I will see you when you get back to Seattle and straighten up the matter then. Do not worry. Truly yours,
"Ben F. Nauman."

The trust deed mentioned was one sent to appellant, as well as to all the other Padilla Bay owners, in the promotion of the oyster-growing project.

Although appellant testified to that 'fact, there was no preponderance of evidence that there was a confidential relationship existing between appellant and respondent Nauman after the apparent breach of friendly relations in 1928.

In his complaint, appellant alleged facts tending to show the existence of a constructive trust. He alleged a fiduciary relationship existing between the parties by reason of their close friendship, and that respondent Nauman had made a promise to take care of the taxes on the land for appellant and then violated it. Since the trial court did not believe that such a promise had been made and then violated, that would be sufficient, of itself, to prevent the establishment of a constructive trust. *Cushing v. Heuston,* 53 Wash. 379, 102 Pac. 29; *McSorley v. Bullock,* 62 Wash. 140, 113 Pac. 279.

There was no secrecy in any of the acts of respondent Nauman in relation to the tax sale as in *Ackerson v. Elliott,* 97 Wash. 31, 165 Pac. 899, whereby a constructive trust arose in favor of appellant. Neither did appellant furnish any of the money with which to pay the taxes, which with the existence of a confidential relation has been held in many cases to create a constructive trust, as in *Frost v. Perfield,* 44 Wash. 185, 87 Pac. 117. Nor was there any fraud inhering in the transaction on the part of respondent Nauman as in *Hansen v. Hansen,* 110 Wash. 276, 188

Pac. 460. See *Farrell v. Mentzer,* 102 Wash. 629, 174 Pac. 482; *In re Weir's Estate,* 134 Wash. 560, 236 Pac. 285.

In the *Farrell* case, *supra,* we reviewed all our former cases and classified them into four groups and, among other things, referred to a fifth group:

". . . those cases where it has erroneously been held that a constructive trust has arisen by the breach of an express contract, where there was no fraud in the transaction and the only bad faith was in the breach of the contract. Here there was an express agreement to do a certain and definite thing; no fraud existed in the making of the agreement, and the only fraud which is claimed was in its breach. Under the decisions which we have analyzed, this is not sufficient to raise a constructive trust."

That quotation seems to exactly fit this case.

Others of our cases cited by appellant, *Landis v. Wintermute,* 40 Wash. 673, 82 Pac. 1000, and *Harras v. Harras,* 60 Wash. 258, 110 Pac. 1085, all involve widely different facts and issues from this case. This case falls within the rules announced in the *Farrell* and *Weir* cases, *supra,* and must be governed thereby.

The judgment is correct. Affirmed.

BEALS, C. J., PARKER, MILLARD, and MITCHELL, JJ., concur.