## TYNG v. CONSTANT-LORAINE INVESTMENT COMPANY.

No. 2058.   Decided March 9, 1910 (108 Pac. 1109).

1. TRIAL—SUBMISSION OF ISSUES TO JURY—EVIDENCE. It is error to submit to the jury an issue as to which there is no evidence. (Page 310.)

2. PRINCIPAL AND AGENT—AUTHORITY OF AGENT—RATIFICATION—QUESTION FOR JURY. In an action by a purchaser of real estate to recover a deposit of earnest money made with a bank under a contract of sale by correspondence, evidence *held* insufficient to present a question for the jury as to the authority of the bank to execute a formal contract of sale or as to ratification of such contract by defendant. (Page 310.)

3. VENDOR AND PURCHASER—OPTION TO PURCHASE—EFFECT OF SUBSEQUENT CONTRACT OF SALE. Where a defendant by letters and telegrams agreed to give plaintiff an option to purchase land, a deposit of earnest money to be made in a designated bank, and the bank, without authority from defendant, executed a formal contract of sale, the terms of the option contract were to be determined by the correspondence, and not by the writing executed by the bank. (Page 312.)

4. VENDOR AND PURCHASER—REMEDIES OF PURCHASER—RECOVERY OF PRICE—ISSUES. Where defendant, through letters and telegrams, gave plaintiff an option to purchase land, the price of the option

to be deposited in a bank, and the bank, without authority from
defendant, executed a formal contract of sale, and plaintiff, in an
action to recover the deposit, based his action on the written con-
tract, he was not entitled to recover on the contract as evidenced
by the letters and telegrams.   (Page 312.)

Appeal from District Court, Third District; *Hon. Geo. T.
Armstrong,* Judge.

Action by Charles Tyng against Constant-Loraine In-
vestment Company.

Judgment for plaintiff.   Defendant appeals.

REVERSED AND NEW TRIAL ORDERED.

*Howat & Macmillan* for appellant.

*Henderson, Pierce, Critchlow & Barrette* for respondent.

STRAUP, C. J.

R. A. Rowan, of Los Angeles, Cal., the president of the
Constant-Loraine Investment Company, a corporation, also
of that city, in December, 1905, conveyed to it by warranty
deed a parcel of ground fifty-three and one-half feet by one
hundred and sixty-five feet situate on the west side of State
Street, in Salt Lake City, Utah, and in the same deed quit-
claimed to it a strip one and one-half feet by one hundred
and sixty-five feet adjoining the fifty-three and one-half feet
on the south. The title so conveyed to the company was
all the title held by Rowan. The strip quitclaimed was oc-
cupied by a wall of a building on land of another adjoining
the strip on the south. Neither Rowan nor the company
ever had possession of the strip occupied by the wall. The
deed from Rowan to the company was made subject to a
mortgage of $20,000 covering both strips (55 by 165 feet),
and was recorded January 4, 1906. The plaintiff, residing
at Salt Lake City, made known to the Equity Investment
Company of Salt Lake City, and to Thomas E. Rowan, a
real estate agent also of that city, a desire to purchase

37 Utah—20

property on the west side of State Street, and in the vicinity of the land in question. Thomas E. Rowan was not related to R. A. Rowan. On the 4th day of September, 1907, Thomas E. Rowan, at Salt Like City, wired R. A. Rowan, at Los Angeles: "Advise cash price west side state taxes prorated whether leased." R. A. Rowan answered the next day: "Will accept fifty thousand dollars. Property now mortgaged for twenty thousand at five per cent. Leases very short. See Kelsey and Gillespie for exact information." On that day Thomas E. Rowan again wired R. A. Rowan: "Responsible party offers one thousand for thirty days' option recommend." R. A. Rowan answered by wire: "Los Angeles, Calif. Sept. 6, 7, 1907. Thos. E. Rowan, Salt Lake, Utah. Will accept one thousand for thirty days' option for property west side State Street. Price fifty thousand subject to twenty thousand mortgage. Balance thirty thousand to be paid in cash on or before thirty days from date. Taxes to be prorated. One thousand to be deposited to my credit immediately with National Bank of Republic, they to notify me by wire. R. A. Rowan."

Upon recepit of this, plaintiff paid to the Equity Investment Company $1000, who deposited it with the National Bank of the Republic to the credit of R. A. Rowan. The bank thereupon gave the Equity Investment Company the following receipt and writing: "Salt Lake City, September 9, 1907. Received of the Equity Investment Company one thousand ($1000) dollars as a deposit on account of the purchase price of the following described real property in the county of Salt Lake, State of Utah" describing the parcel of ground 55 feet by 165 feet," which property the Equity Investment Company agrees to buy for the sum of fifty thousand ($50,000) dollars, payable as follows: Thirty thousand ($30,000) dollars on or before thirty days from the date of this receipt. The above-mentioned deposit of one thousand ($1000) dollars to be applied as a part of said payment. The balance of twenty thousand ($20,000) dollars to be covered by a mortgage for that amount now on the property, which mortgage the Equity Investment Com-

pany agrees to assume and pay. The property to be deeded by a warranty deed free of all incumbrances except aforesaid mortgage of twenty thousand ($20,000) dollars and the general taxes for the year 1907. The Equity Investment Company agrees to pay their proportion of the said taxes from the date possession is delivered to them. This deposit is made with the National Bank of the Republic, and accepted by them under authority of the following telegram from R. A. Rowan: 'Los Angeles, Calif., Sept. 6, 7, 1907. Thos. E. Rowan, Salt Lake, Utah: Will accept one thousand for thirty days' option for property west side State Street. Price fifty thousand, subject to twenty thousand mortgage. Balance thirty thousand to be paid in cash on or before thirty days from date. Taxes to be prorated. One thousand to be deposited to my credit immediately with the National Bank of Republic, they to notify me by wire. R. A. Rowan.' If the Equity Investment Company does not complete the purchase of said property within the time and manner above specified, then this deposit shall be forfeited to the seller as liquidated damages. National Bank of the Republic, by Frank Knox, Pr."

At the same time and place the Equity Investment Company assigned and delivered the writing to the plaintiff. The assignment was indorsed on the back of the writing. On the 20th day of September, 1907, R. A. Rowan, as president, and P. D. Rowan, as secretary, of the Constant-Loraine Investment Company, at Los Angeles, executed and mailed to the bank at Salt Lake City a deed to the Equity Investment Company, conveying and warranting to it 53½ feet by 165 feet, and in the same instrument quitclaimed to it 1½ feet by 165 feet, the strip occupied by the wall, being all the title held by it to the property, and being the same and all the title theretofore conveyed to it by R. A. Rowan. On the 9th day of October, the last day of the option, the plaintiff tendered the bank $29,000, and demanded a deed. The bank tendered him the deed, which was executed and forwarded by R. A. Rowan. The plaintiff refused to accept it on the ground that it contained a war-

ranty for only 53½ feet, and demanded a warranty deed for the entire 55 feet, and as stipulated by the contract executed by the bank. He refused to pay any part of the $29,000 until such a deed was executed and tendered by the defendant. Such a deed was not tendered.

In a letter from R. A. Rowan to Thomas E. Rowan, the former, on the 9th day of October, wrote: "I wired you yesterday as follows: 'No one ever had authority to sell the property in question for less than fifty thousand, and that is a special price, having always held it before at $58,500. Can only sell the property as I bought it and giving the same deed I received. Mr. Holloran, the former owner, is acquainted with the particulars of this property, and am sure he will assist you in any way possible.' Of course, you understand that I have never given you the exact frontage of the State Street lot, but have always said it was about fifty-five feet, and I believe that is the exact dimension, although we only have a warranty deed for 53½ feet, and a quitclaim deed for the balance which I am in turn giving to your people. I can only sell what I have, and I will not reduce the price from $50,000 as I know this is less than it is worth. I hope that you will be able to put the sale through without any trouble."

The contention of the plaintiff is stated in a letter written by his counsel on the 9th day of October, 1907, and addressed to the bank, R. A. Rowan, and the Constant-Loraine Investment Company. They wrote: "On the 9th day of September, 1907, you gave a contract to the Equity Investment Company to sell the following parcel of real estate, situate in Salt Lake County, Utah, to-wit:" Describing a parcel of ground 55 by 165 feet. "At which time $1000 was paid upon the purchase price. The contract provides for the payment of $29,000 more on or before the thirty days from date of the contract. Your contract also provides that you shall furnish a warranty deed to the property, and that the property shall be free of incumbrances except the $20,000 mortgage. Upon the examination of the title to the property, I find that you can deliver only 53½

feet of the property; that the south 1½ feet is not owned by you or either of you, but is occupied by a wall on the adjoining property on the south. The contract above referred to has been assigned to me. This is to notify you of the facts stated in this letter, and also demand that you return to me forthwith the $1000 heretofore paid on the purchase price."

The $1000 was not returned. Thereupon the plaintiff brought this action against the Constant-Loraine Investment Company, based on an alleged breach of the contract or writing executed by the bank, arising from the failure of the Constant-Loraine Investment Company to tender and give a warranty deed for the whole of the fifty-five feet as stipulated by the terms of that contract, and its refusal to return the $1000 paid by plaintiff or his assignor. A judgment was prayed for in the sum of $1000 and interest. The answer was in effect a general denial. The case was tried to a jury. A verdict was rendered for the plaintiff. The defendant appeals.

The defendant requested the court to direct a verdict in its favor on the grounds, among others, that there was not sufficient evidence to show that the bank had any authority to execute the contract sued on, or to bind either the defendant or Rowan thereto, or that the defendant had thereafter ratified or adopted the contract, and that it was not shown that the contract executed by the bank and declared on was made on behalf, or for the benefit, of the defendant, and if the contract was not the personal contract of the bank but was made in behalf, or for the benefit, of another, it was for the use and personal benefit of R. A. Rowan and not the defendant. The court refused the request, and instructed the jury that before the plaintiff was entitled to recover he was required to prove that the writing or agreement executed by the bank and sued on "was made for and on behalf of, and by the authority of, the said defendant (Constant-Loraine Investment Company), or that after the making of the same said defendant ratified and adopted said agreement."

Assuming all that R. A. Rowan did in the premises was

done for and in behalf of the defendant and for its benefit, and that the jury were justified in finding that his acts in the transaction were the defendant's acts, still we are of the opinion that there is not sufficient evidence to show that either R. A. Rowan or the defendant had conferred any authority upon the bank to execute the contract in question, or that either thereafter ratified or adopted it. On the face of the contract it appears to be signed by the bank in its own name, and not for or on behalf of either R. A. Rowan, or the defendant. If, however, it was in fact signed by the bank in behalf, and for the benefit of another then the only evidence authorizing the bank to do so is the telegram attached to the contract. That telegram did not authorize it to do anything in the transaction except to receive the payment of the $1000 and to deposit it to the credit of R. A. Rowan. It did not authorize the bank to make a contract of purchase, nor to stipulate the terms thereof, nor to warrant the title to fifty-five feet, or to any other number of feet. So far as appears by the telegram, the **1, 2** only authority of the bank was that of a mere depositary, which was disclosed by both the Equity Investment Company and to the plaintiff. There is no evidence to show that it had any other authority. When the court submitted to the jury the question whether the contract was made "by authority of said defendant," the jury had the right to assume that there was some evidence from which they might make a finding that the defendant had authorized the making of the contract. We find no such evidence.

Neither do we find any evidence that the "defendant ratified and adopted said agreement." So far as the record discloses, the first knowledge that R. A. Rowan had that the plaintiff claimed the right to a warranty deed for fifty-five instead of fifty-three and one-half feet of ground was the telegram sent by Rowan to Thomas E. Rowan, the contents of which were stated in his letter of October 9th, heretofore referred to. But instead of ratifying, he repudiated the authority. Again, on the 24th day of October, the first time R. A. Rowan made any reference to the bank contract, he

again wrote to Thomas E. Rowan: "Am having my attorney look over the contract given by the National Bank of the Republic, and if I am not legally bound to return this sum I will not do so, as I am not morally bound to return it, and in justice should not do so. My telegram was embodied in the contract, and the contract was really based upon the telegram, and from the best advice that I can get at this writing I do not believe that I will be obliged to return it." The correspondence from R. A. Rowan to Thomas E. Rowan after the 9th day of October is, however, not of much significance, for at that time plaintiff, through his counsel, in a letter written by them and heretofore referred to, did not express a willingness to pay the $29,000 on a tender of a good title by warranty deed to the fifty-five feet of ground, but unconditionally demanded a forthwith return of the $1000. By that letter the plaintiff regarded the breach complete, and, so far as he was concerned, treated the transaction as ended. Nothing is made to appear that anything subsequently said or done by R. A. Rowan or the defendant in any way influenced his conduct in the premises, or induced him to take any other or different position from that taken by him in his letter of October 9th, declaring a breach and an immediate and unconditional return of the $1000.

It, however, is claimed by counsel for respondent that R. A. Rowan "knew what was in that receipt, either by having a copy of it sent to him or else by having its contents communicated to him." There is no evidence that a copy was sent him, or that the contents thereof were otherwise made known to him before plaintiff's tender of the $29,000 and his refusal to accept the tendered deed. If a copy of the contract was sent, or the contents thereof communicated, to R. A. Rowan before that time and before the controversy arose, such facts could readily have been shown. It is argued, however, that he must have known of the terms of the bank contract on September 20, 1907, when he executed the deed to the defendant, because he put the name of the Equity Investment Company in the deed as the grantee,

and that the name of such grantee could not have been acquired except from the contents of the bank contract. The information that it was the Equity Investment Company who paid the $1000 and who held the option could readily have been obtained by R. A. Rowan from sources other than the contents of the contract. The question is not, Did Rowan know that the Equity Investment Company paid the $1000 and obtained the option, but, Did he know that the bank had agreed to convey and warrant fifty-five feet of ground, or that it had made any agreement in respect of the terms of the option and purchase? We do not think the evidence sufficient to show a ratification of the contract sued on.

Furthermore, we are of the opinion that the terms of the option are evidenced, not by the writing or receipt given by the bank, but by the telegrams which passed between Thomas E. and R. A. Rowan. In those are found the offer, the acceptance, and the terms of the option. It is unnecessary to determine the legal effect of the contract as evidenced by the telegrams, or whether the defendant complied with the terms thereof by tendering a warranty deed to only fifty-three and one-half feet and a quitclaim deed to one and one-half feet, for the reason that the plaintiff did not declare on that contract, but did declare on the contract made by the bank. The case was predicated alone on the latter contract, and the court submitted it to the jury on that theory, and required them to find, before they could render a verdict for the plaintiff, that the contract signed by the bank was made by authority of the defendant, or that it was thereafter ratified and adopted by it. There being no evidence in support of such issues submitted to the jury, the court erred in refusing to take the case from the jury, and again erred in refusing the defendant's motion for a new trial.

The judgment of the court below is reversed and the case remanded for a new trial. Costs to appellant.

FRICK and McCARTY, JJ., concur.