DETERMINED IN

# THE SUPREME COURT

OF THE

# STATE OF UTAH

(*Continued from Volume 49*)

## TYNG v. CONSTANT-LORAINE INV. CO.

No. 3029.   Decided May 8, 1917.   (165 Pac., 509.)

1. VENDOR AND PURCHASER—OPTION—MEETING OF MINDS—RECOVERY
   OF PAYMENT. If minds of parties executing option agreement failed
   to meet upon question of amount of land to be conveyed plaintiff
   could recover from defendant amount paid thereunder.   (Page 8.)

2. APPEAL AND ERROR—FORMER APPEAL—REVERSAL—NECESSITY OF
   SUBSTANTIAL ERROR. After two appeals had previously been taken
   and four juries had passed on the facts and found in plaintiff's
   favor, judgment will not be interfered with unless defendant has
   been prejudiced in some substantial right during progress of trial or
   in submission of case to jury.   (Page 9.)

Appeal from the District Court, Third District: *Hon. T. D.
Lewis,* Judge.

Action by Charles Tyng against the Constant-Loraine In-
vestment Company.

Judgment for plaintiff.   Defendant appeals.

AFFIRMED.

*Howat, Marshal, Macmillan & Nebeker* and *Robert H.
Butterfield* for appellant.

*Pierce, Critchlow & Barrette* for respondent.

Vol. 50—1

FRICK, C. J.

The plaintiff brought this action to recover the sum of $1,000 from the defendant, which plaintiff alleged the defendant wrongfully retained from him. This case has been here on appeal twice before. *Tyng* v. *Constant-Loraine Inv. Co.*, 37 Utah, 304, 108 Pac. 1109; Id., 47 Utah, 330, 154 Pac. 767. Plaintiff recovered in both trials, but the judgments in his favor were reversed on defendant's appeals. On the last trial the plaintiff again prevailed, and the defendant again appeals.

In view of the former opinions, to which we specially refer, and for the reason that both parties in their respective briefs state that "the evidence in this case is practically identical with that introduced on the previous trial of the case," we shall not state more of the record than is absolutely necessary to an understanding of the points decided.

The controversy between the parties arose out of what is termed an option agreement to purchase certain real property in Salt Lake City. The transaction in question, however, arose between one R. A. Rowan, of Los Angeles, as the president of the defendant company, on the one hand, and the Equity Investment Company, a Utah corporation, upon the other. The plaintiff, however, succeeded to all of the rights of said company by assignment before the action was commenced. The transactions in question here were initiated by one Thomas E. Rowan, a real estate broker of Salt Lake City, by a telegram dated September 4, 1907, which was transmitted to said R. A. Rowan at Los Angeles. The telegram reads:

"Advise cash price west side State, taxes prorated, whether leased."

The telegram was addressed to R. A. Rowan for the reason that the title to the property inquired about was in him. On the following day R. A. Rowan wired as follows:

"Will accept fifty thousand. Property now mortgaged for twenty thousand at five per cent. Leases very short. See Kelsey & Gillespie for exact information."

To that telegram Thomas E. Rowan, on the same day, replied:

"Responsible party offers one thousand for thirty days' option. Recommend."

In response to the foregoing R. A. Rowan wired as follows:

"Will accept one thousand for thirty days' option for property west side State street. Price fifty thousand, subject to twenty thousand mortgage. Balance, thirty thousand, to be paid in cash on or before thirty days from date. Taxes to be prorated. One thousand to be deposited to my credit immediately with National Bank of Republic, they to notify me by wire."

Upon receipt of the foregoing telegram the Equity Investment Company deposited with the bank aforesaid $1,000, and received from said bank the following writing:

"Salt Lake City, September 9, 1907. Received of the Equity Investment Company one thousand ($1,000.00) dollars as a deposit on account of the purchase price of the following described real property in the county of Salt Lake, state of Utah: [Describing the parcel of ground 55 feet by 165 feet]—which property the Equity Investment Company agrees to buy for the sum of fifty thousand ($50,000.00) dollars, payable as follows: Thirty thousand ($30,000.00) dollars on or before thirty days from the date of this receipt. The above mentioned deposit of one thousand ($1,000.00) dollars to be applied as a part of said payment, the balance of twenty thousand ($20,000.00) dollars to be covered by a mortgage for that amount now on the property, which mortgage the Equity Investment Company agrees to assume and pay; the property to be deeded by a warranty deed free of all incumbrances except aforesaid mortgage of twenty thousand ($20,000.00) dollars and the general taxes for the year 1907. The Equity Investment Company agrees to pay their proportion of the said taxes from the date possession is delivered to them. This deposit is made with the National Bank of the Republic, and accepted by them under authority of the following telegram from R. A. Rowan: 'Los Angeles, Calif., Sept. 6, 7, 1907. Thos. E. Rowan, Salt Lake City, Utah: Will accept one thousand for thirty days' option for property west side State

street. Price fifty thousand to be paid in cash on or before thirty days from date. Taxes to be prorated. One thousand to be deposited to my credit immediately with the National Bank of Republic, they to notify me by wire. R. A. Rowan.' If the Equity Investment Company does not complete the purchase of said property within the time and manner above specified, then this deposit shall be forfeited to the seller as liquidated damages. National Bank of the Republic, by Frank Knox, Pr.''

The $1,000 was, in fact, plaintiff's money, and immediately after the deposit was made the Equity Investment Company assigned and delivered the foregoing writing to the plaintiff. It will be observed that in none of the statements does anything appear respecting the dimensions of the property, but in the writing that was given by the bank to the plaintiff the property is described as being 55 by 165 feet.

Pursuant to the foregoing deposit the defendant company, on the 20th day of September, 1907, by R. A. Rowan, as president, and P. D. Rowan, as secretary, executed and transmitted by mail to said bank at Salt Lake City a warranty deed by which it conveyed and warranted to the Equity Investment Company 53½ by 165 feet, and in said deed also quitclaimed all right, title, and interest in and to a strip 1½ by 165 feet adjoining the 53½ by 165 feet aforesaid. On the day before the option expired the plaintiff tendered to the bank the sum of $29,000, being the balance due on the option, and demanded a deed for the property described in the writing he had received from the bank, namely, 55 by 165 feet. The bank, however, tendered plaintiff the deed executed by the defendant as aforesaid, which the plaintiff refused to accept, and demanded a warranty deed for the full 55 by 165 feet, and refused to pay the $29,000 unless and until he should receive such a deed. A deed as requested by plaintiff was, however, refused by the defendant company, and hence this action to recover back the $1,000 deposited as before stated.

On the first appeal the judgment in favor of the plaintiff was reversed upon the ground that the district court had erred in submitting to the jury the question of whether the writing

issued by the bank was authorized or ratified by the defendant company in the absence of any evidence to support such an issue. It was, however, also held on that appeal that, inasmuch as the plaintiff sought a recovery upon the writing issued by the bank, which was issued by it without authority and without evidence of ratification, he could not recover upon the contract evidenced by letters and telegrams. On the second appeal the judgment in favor of the plaintiff was reversed upon two grounds: (1) That the district court erred in refusing to submit to the jury the question of whether the minds of the parties had met upon the quantity of ground that was included in the telegrams; and (2) that the court had erred in requiring R. A. Rowan to answer certain questions on cross-examination. The latter objection is, however, entirely eliminated from this appeal. In the opinion on the second appeal the grounds are fully discussed, and, to avoid all controversy respecting what was decided, and the grounds upon which that decision is based, we append the following excerpts from the opinion:

"A point is made that there is no evidence to show that R. A. Rowan, in sending the telegram, or in anything that he did, acted for the defendant, or that the $1,000 which was paid to the bank was deposited to the credit of the defendant, or for its benefit, or that it received the money, it, in such respect being contended that Rowan acted for himself, and that the money was deposited to his credit and for his benefit. While everything was done in the name of R. A. Rowan, except the making of the deed, which was in the defendant's name, still there is sufficient evidence to justify findings that Rowan acted for the defendant, and that it received the money deposited in the bank. At any rate, the defendant, by making and forwarding the deed to the bank, ratified the transaction to convey whatever west side State street property was owned by it, upon payments being made as specified in the telegrams. The serious question is: What contract in such respect was made? As has been seen, we on the former trial, held that neither Rowan nor the defendant authorized the bank to make a contract to convey 55x165 feet by warranty, or to make any agreement with respect to the terms of the option, or that either ratified the writing which the bank gave in such particular. We also held that the telegrams which passed between Thomas E. Rowan and R. A. Rowan evidenced the terms of the option. Whether right or wrong, our holding as to that is the law in the case and was binding on a retrial on the same evidence. The evidence as to the bank's authority to give the writing, or as to the defendant's ratification

thereof, is the same on this as on the other trial. And so was it regarded by the trial court, and for that reason were all questions as to such authority and ratification withheld from the jury. The writing which the bank gave can therefore not be looked to for the terms of the option. For that we must look elsewhere, primarily to the telegrams. In them we have the offer, acceptance, and terms of the option. Everything therein expressed is sufficiently definite and certain, except the description of the property. The description stated in the telegrams is, 'property west side State street.' That, of course, is ambiguous. It was competent to aid the ambiguity by extrinsic evidence, which the parties were permitted to do. The further question is: Was the ambiguity sufficiently aided to ascertain the intention of the parties as expressed by them in the contract? It is clearly enough shown just where the lot is, and that the defendant owned but one lot on the west side of State street. By extrinsic evidence it also is made to appear that the plat in the recorder's office showed the lot to be 55x165 feet. It, however, is just as clearly made to appear by the abstract books and records of deeds that the title which the defendant had by warranty deed was only to 53½ feet and 1½ feet by quitclaim. It also is made to appear that on the 1½ feet stood a wall of an old two-story house adversely possessed and held by another. To aid the ambiguity 'property west side State street,' we do not think the plat in the recorder's office was alone conclusive as to what was intended by the parties. That, of course, was some evidence of their intention, and some evidence as to what they meant by the language 'property west side State street.' But the abstract book and the records of deeds also were evidence for the same purpose. It is not shown that the plaintiff, before he paid the $1,000, saw the plat in the recorder's office, or the abstract books or records of deeds, or even examined the property to ascertain its frontage, or that he saw Kelsey and Gillespie for information, as was stated in one of the telegrams he could do for 'exact information.' He did see a 'regular real estate man's plat' which showed the property to be 55x165 feet, just as indicated by the plat in the recorder's office. But it is not made to appear that he even saw that before he paid the $1,000. So far as disclosed by the record, it is not made to appear just what information as to the exact number of feet in the lot the plaintiff had prior to, or at the time of, the payment of the $1,000, except as recited in the writing given by the bank that the lot was 55x165 feet, and that a warranty deed was to be given for that much ground. Nor is it made to appear from what source the bank got information as to the number of feet of ground to be conveyed or what induced it to give a receipt calling for 55 feet. Certain it is the telegram pointed to by it in its receipt, as authority to accept the money, gave it no such authority, and, indeed, gave it no authority, to make or specify any of the terms of the option to purchase. And we think the bank by the recital of the telegram in hæc verba, disclosed just what authority it had, that of a mere depository. After the

payment of the $1,000, and when the abstract of the title was examined by plaintiff's counsel, it was discovered that the defendant had title by warranty to only 53½ feet and a quitclaim to 1½ feet. Then it was that he and his counsel visited the premises and found the wall of the house on the 1½ feet. There, however, is evidence to justify a finding that the plaintiff believed and understood that the defendant was to convey 55 feet by warranty deed. That is supported by the bank's receipt, which, while not competent, because unauthorized, to show the terms of the option, nevertheless, as it was seen and relied on by the plaintiff when the $1,000 was paid, was competent, with other matters, to show how he regarded the ambiguity and understood the contract as to the number of feet which, by its terms, was to be conveyed by warranty. But, since it is not made to appear that the defendant or Rowan, its president, had, prior to plaintiff's refusal of the defendant's tender, knowledge of the terms of the bank's receipt calling for a conveyance of 55 feet by warranty, the receipt was not evidence to show either the terms of the contract or in what sense the defendant understood them with respect to the ambiguity. We also think there is other evidence to justify a finding that the plaintiff, by the ambiguity, believed and understood that 55 feet of ground was to be conveyed by warranty. On the other hand, there is evidence to show that, had he, before he paid the $1,000, inspected the records to ascertain what 'property west side State street' the defendant had, the exact number of feet which it owned and was capable of conveying by warranty could have been ascertained, and thus he could have known just what the defendant meant by the phrase 'property west side State street.' Thus, when the extrinsic evidence is looked to, the meaning of the ambiguity 'property west side State street' is about as doubtful as it was before.

"Upon the record we deduce these informations: Since the writing given by the bank was neither authorized nor ratified, there is no sufficient evidence to justify a finding that the defendant had agreed to convey 55 feet by warranty, or that it, by the ambiguous phrase, meant or intended to convey any other or different property than was owned and tendered by it. Hence the court erred in submitting the case to the jury on the theory that the defendant had agreed to convey 55 feet by warranty and in binding the jury as was done, that to render a verdict for the plaintiff the jury was required to find that the defendant had agreed to convey 55 feet by warranty. As to the plaintiff's understanding of the ambiguity, and in what sense he regarded the contract, there are two views. One is that he understood and regarded it in the sense that the defendant understood it and as tendering by its conveyance whatever property was owned by it on the west side of State street. If so, then the minds of the parties met; then did the defendant tender a deed in accordance with the agreement; and then was there no breach and no obligation to return the $1,000. The other view is that the plaintiff understood the ambiguity to mean a conveyance by warranty of 55 feet. If so, then

the minds of the parties did not meet; then was there no contract; and then was the plaintiff entitled to a return of the $1,000 paid by him, not on the theory of any breach of contract, but of money had and received. And for that reason was the defendant not entitled to a direction of a verdict. On such view—the view that the minds of the parties had not met as to what was agreed to be sold and conveyed, and therefore, if the jury so found the facts, the plaintiff was entitled to a return of the $1,000—the plaintiff asked to go to the jury; and, as appears by his requests, that was the only view on which he asked a submission of the case. The court refused the requests or to submit the case on such theory, but, as has been seen, submitted it on the theory alone of whether the parties, independently of the recitals in the bank's receipt, and especially as evidenced by the telegrams, had entered into an agreement to convey 55 feet by warranty, or only 53½ feet by warranty and 1½ feet by quitclaim. Notwithstanding there are no cross-assignments, and no request or motion in the court below on behalf of the plaintiff to direct a verdict in his favor, he nevertheless, in defense of the verdict and judgment, urges an affirmance, on the theory embodied in his refused requests. Since this is a law case in which our power to review, except jurisdictional matters, is restricted to assignments of error, and where we may not, as in equity, look into the evidence to determine the correctness of the judgment, and as there was no motion nor request to direct a verdict in plaintiff's favor, nor even any assignment presenting the rulings refusing his request, our power to affirm the judgment on the theory of money had and received is doubtful, even though on a review of the evidence it should appear that such a direction, had it been asked, would have been justified. But looking into the record as we have, we, as already indicated, are of the opinion that the evidence is not so conclusive as to have entitled the plaintiff to such a direction had such a request been asked or motion made. So too, apparently, was the case regarded by the plaintiff himself, and hence asked for no such direction as matter of law, but for a submission as matter of fact. Thus is it apparent that to now affirm the judgment on the theory urged would be to infringe upon the right to trial by jury and to uphold the judgment upon a wholly different theory from that on which the case was submitted. The judgment therefore must be reversed, and the case again remanded for a new trial.''

Upon the last trial the district court submitted the issue to the jury as suggested in the foregoing opinion, and the jury found that issue in favor of the plaintiff. The jury having found that the minds of the parties did not meet upon the question of the number of feet that were included in the telegrams referred to, the defendant company, as suggested in the opinion on the second appeal, had no right to retain plaintiff's $1,000. Notwithstanding

that issue has finally been settled by the jury in plaintiff's favor, the defendant, on its present appeal, nevertheless, again presents all the questions argued on the former appeals, with others added. Barring the assignments relating to the admission and exclusion of evidence, and a few other unimportant ones, all the questions now argued have been disposed of on the two former appeals, and no good purpose could be subserved in rearguing those questions here. If, as the jury found, the minds of the parties did not meet upon some essential elements, then it must follow that no contract was entered into by the parties, and hence the defendant retains the $1,000 of plaintiff's money without right or authority of law. That is practically all that is left of this case.

The court fully and fairly submitted all questions of fact to the jury, and, in view that four juries (the first verdict was set aside by the trial court) have now passed on the facts, and all have found in favor of the plaintiff, the litigation should not be prolonged unless the defendant has been prejudiced in some substantial right during the progress of the trial or in the submission of the case to the jury. It is, however, due to defendant's counsel to say that many of their assignments, and a large part of their argument, are based upon the theory that there was an enforceable contract or agreement entered into between the parties. In view that such theory is not the correct one, the exceptions to the instructions and the assignments relating to the refusal of the court to charge as requested are without merit.

Nor are the assignments relating to the admission and exclusion of evidence meritorious. Without going into further detail, it must suffice to say that a careful examination of the record discloses nothing which would authorize us to interfere with the judgment in favor of the plaintiff a third time.

The judgment is therefore affirmed, with costs to the plaintiff.

McCARTY and CORFMAN, JJ., concur.