[No. 15530.   Department Two.   January 2, 1920.]

## CHARLES W. SEWELL, *Respondent,* v. LILLIAN SEWELL *et al., Appellants.*[1]

TRUSTS (19)—PAROL EVIDENCE TO ESTABLISH—WEIGHT AND SUF-
FICIENCY.   The evidence to establish a trust by parol must be clear,
cogent and convincing, and is insufficient, where, in a controversy
between mother and son over the conduct of a business owned by
them, their testimony was conflicting and indicated that a transfer
of capital stock and real estate by the son to the mother was either
upon consideration of the assumption of liabilities which were sub-
sequently paid, or to avoid any judgment third parties might obtain
against him.

Appeal from a judgment of the superior court for
King county, Jurey, J., entered April 5, 1919, upon
findings in favor of the plaintiff, in an action to estab-
lish a trust, tried to the court.   Reversed.

*Kerr & McCord* and *Stephen V. Carey,* for appel-
lants.

*Alexander & Bundy,* for respondent.

MOUNT, J.—The object of this action was to have
certain real estate and certain shares of stock of the
Pacific Coast Stamp Works, held by the defendant
Lillian Sewell, declared to be held by her in trust for
the plaintiff.   Upon issues joined, the case was tried
to the court, and at the conclusion of the evidence, the
trial court found that the real estate and shares of
stock were held in trust by the defendant for the bene-
fit of the plaintiff.   The defendant Lillian Sewell has
appealed from that judgment.

The controlling facts may be briefly stated as fol-
lows:   All the stock of the Pacific Coast Stamp Works,
a corporation, was held by the respondent and his
mother, the appellant.   The capital stock of this cor-

[1]Reported in 186 Pac. 289.

poration was divided into two hundred shares, of which the respondent held sixty-nine shares and his mother one hundred and thirty-one shares. Up to December the 10th, 1914, the business of the corporation in Seattle had been managed entirely by the respondent. He had unlimited access to the cash and all the business of the corporation. About that time the respondent had permitted bills of the corporation to remain unpaid, had spent more money than his salary in fast living, and his mother had been informed that he was about to be sued. Thereupon, on the 10th day of December, 1914, he transferred, by an assignment reciting that the transfer was for a valuable consideration, sixty-eight shares of his stock to his mother. His version of this transfer, as related in the abstract of the record, is as follows:

"Regarding the transfer of the stock, she discovered that I was keeping company with a woman of whom she had not approved. One thing led to another and there was considerable discussion about it. She repeated gossip she had heard. She informed me that, as this woman could not get any more money out of me, she was going to sue me, and mother suggested that, for the benefit of the business, I had better turn my stock over to her and let her keep it until the thing had blown over. When mother said this woman could not get any more money out of me she meant I had been spending all my salary and what other money I could get my hands on for this woman. Prior to this transfer of stock nothing was done about shutting off my financial supply. Shortly after this trouble mother arranged to countersign the checks. I transferred the stock to her, as she suggested, to keep peace in the family. I continued to manage the business with no change except mother countersigned the checks."

His mother's version of the transfer was substantially to the effect that at this time, on account of her son's extravagance, the financial condition of the cor-

poration was approaching insolvency; that she told her son she had put all the money in the business that she was going to put into it; that she would not put any more money into it unless the management of the business was changed; that he thereupon agreed to transfer to her all his shares except one share, in consideration that she assume the obligations and liquidate the debts of the corporation. The evidence shows that, at about this time, she employed a bookkeeper whose duty it was to assist her son in the management of the company; that her son was not permitted to draw any checks; that she was required to countersign all checks drawn by the corporation; that afterwards the business of the company was conducted in that way until it finally paid all the debts that were owing. The business of the company thereafter seemed to prosper. The record shows that, soon after the transfer of these shares of stock, the interest of the respondent in certain real estate was deeded to his mother. She had nothing to do with the transfer. She says she paid no consideration for the deed; she did not know it was being transferred to her until after the deed had been made and recorded and returned to her by direction of her son. She testified that, after the title was placed in her name, she paid some five hundred and thirty dollars of debts of her son on account of this real estate.

In August of 1918, some dispute arose between the respondent and his mother in regard to a sale of part of the business. The respondent claimed an interest therein, which she denied. The respondent thereupon, without informing his mother, drew and cashed a check for some six hundred and fifty dollars and disappeared. He was gone from the city for about six weeks. From that time until the trial of this case in March of 1919, the appellant did not see her son. In

the meantime he brought this action against her. Many other facts were shown in the testimony at the trial regarding the manner in which the Pacific Coast Stamp Works had been built up; how the mother had furnished the money and the son and managed the business for a long period of years. But this, we think, is entirely immaterial to the issue. The principal and real issue in the case is whether or not this stock and this real estate were transferred to the mother in trust to be held by her until demanded by her son. The respondent alleges that they were so held. The appellant vigorously denies that there was any trust. We think the evidence on the part of the respondent is not sufficient to show that there was any trust agreement. He says he transferred the stock to his mother at his mother's request in order to keep peace in the family, or words to that effect. The inference to be drawn from his whole testimony is that his mother was dissatisfied with his conduct; that, in order to prevent some other person from acquiring the stock by means of suit or otherwise, she insisted that he transfer the stock to her. Her reason for the transfer of the stock is somewhat different; but we are satisfied, from the whole record, that the stock was transferred by the respondent to his mother either to put it out of his hands, so as to avoid any judgment which might be had against him by third parties, or it was transferred for some consideration. In either event, there can be no recovery. This court has held, in common with other courts, that, in order to establish a trust by parol, the evidence must be clear, cogent and convincing. *Denny v. Holden,* 55 Wash. 22, 103 Pac. 1109; *Adley v. Pletcher,* 55 Wash. 82, 104 Pac. 167; *Herriford v. Herriford,* 78 Wash. 429, 139 Pac. 212.

The respondent asserts that he transferred the stock to his mother in order to keep peace in the family.

The mother's version is different. She claims that it was transferred for a consideration, namely, that she should assume the obligations and keep the business going. But in either event there is no clear, cogent or convincing evidence that a trust of any kind was created by the transfer. It appears that, after the transfer had been made, the appellant desired some money and her son suggested that a dividend be declared of something over nine hundred dollars. He testified that a dividend was declared; that he credited himself with one-half thereof and his mother with the other half, but that she obtained all of the money. It is argued by the respondent that this is evidence of the fact that the stock was held in trust by the mother. Conceding this to be a circumstance, it is a very slight one. It does not furnish clear and convincing evidence of a trust. We have carefully read the abstracts of the evidence in the case and are convinced that there is not sufficient evidence that these parties, at the time the transfers were made, intended that the appellant should hold either the real estate or the stock of the corporation in trust to be delivered up to the respondent upon demand. We think the trial court was in error in so holding.

The judgment is therefore reversed, and the cause remanded with instructions to dismiss the action.

HOLCOMB, C. J., BRIDGES, and FULLERTON, JJ., concur.