[No. 18758. Department Two. May 6, 1925.]

LAWRENCE DONEEN, *Appellant*, v. JOHN W. DONEEN, *as Executor of the Estate of Michael Doneen, Deceased, et al., Respondents.*[1]

TRUSTS (19)—RESULTING TRUSTS—ESTABLISHMENT — EVIDENCE — SUFFICIENCY. Findings of the trial court that parol evidence did not establish a resulting trust in all the property of which a deceased brother died seized, by clear, cogent and convincing evidence, are sustained, notwithstanding proof of admissions by the deceased that his brother had a half interest in the property, which was the proceeds of an equal partnership between them, terminated many years since, where there was proof that deceased's brother, though broke, had never claimed such an interest, had solicited a "gift" from the deceased, and resorted to other means of acquiring a livelihood, and that he had received substantial sums from the deceased and had spent money freely, while the deceased had been thrifty and saving.

Appeal from a judgment of the superior court for Spokane county, Huneke, J., entered November 9, 1923, dismissing an action to establish a claim against the estate of a decedent, after a trial on the merits before the court. Affirmed.

*Parker W. Kimball,* for appellant.
*Crollard & Steiner,* for respondents Doneen *et al.*
*Cannon & McKevitt,* for respondents Hartigan.

FULLERTON, J.—Michael Doneen died testate in Spokane county on June 5, 1922. He left a considerable

[1]Reported in 235 Pac. 797.

estate, consisting of real and personal property, situated in the counties of Spokane, Whitman, Douglas and Chelan. He had no lineal descendants, and in his will, after making certain bequests to charitable institutions, divided his property in unequal proportions between his brothers, sisters, and certain nieces, naming his brother John W. Doneen, as his residuary legatee.

To his brother Lawrence Doneen, the testator devised in fee certain real property situated in the town of Oakesdale, in Whitman county, and the interest on ten thousand dollars to be paid to him annually during his lifetime. He named his brother John W. Doneen as executor of his estate.

The will was duly admitted to probate in Spokane county, and the executor named therein confirmed as such. Shortly thereafter Lawrence Doneen presented to the executor a claim against the estate, averring therein that he was the owner of an undivided half of all of the property, both real and personal, of which the testator had died seized. The claim was rejected by the executor, and the present action was thereupon begun to establish the claim. Certain legal objections were taken to the proceedings by the executor and the devisees on their appearance in the action, but these were overruled by the trial court. They thereupon answered to the merits, and after a trial upon the facts, the court found that the preponderance of the evidence was against the plaintiff and entered a judgment in accordance with the finding. The appeal is from this judgment.

The legal objections made in the court below against the appellant's right of recovery are again urged in this court. While as legal principles they are undoubtedly well founded, we doubt their applicability to the facts shown by the record. We shall not, therefore, notice them specifically, but will pass to the facts

of the case, as our study of the evidence convinces us that the court correctly determined the case upon the facts.

The testimony on behalf of the appellant shows his business relations with his brother Michael for a considerable period antedating their arrival in Spokane, in this state, in the year 1890, but as these relations have no direct bearing upon the subject-matter of the present controversy, they will be passed without further reference than to say that, during the time of their occurrence, the brothers followed the pursuit of gambling. They arrived in Spokane in the month of April of the year named. Shortly thereafter, in partnership with two other persons, they fitted up a club-room in that place in which they installed a number of gambling games, known to the gambling profession as banking games. These games required personal supervision, and this supervision was furnished by the proprietors. For this supervision, they were each paid a fixed stipend per day, usually paid at the close of each day's business. The remaining gains from the business were collected daily, deposited into the partnership's strong box, and divided between the partners at the end of weekly periods. The partnership was continued until the month of April, 1894, when the Doneen brothers withdrew therefrom. There is nothing in the record which shows with any definiteness what the gains from the business were. Enough does appear, however, to show that they aggregated a large sum, and that they furnished the foundation for the very considerable fortune that is in controversy in the present action.

On the weekly division of the gains of the partnership, Michael generally took the share that would fall to the appellant. The explanation for this is that the appellant was a spendthrift, wont to spend his money

as fast as it came into his hands, and that it was the desire of Michael to save something for him out of the joint earnings that he might not be in want during his declining years. There is no pretense, however, that the appellant was without capacity. Indeed, he alleges in his own complaint that he "was the money-maker of said partnership in the acquisition of all partnership funds," and evidence elsewhere discloses that he was intelligent and competent. Nor is there in the record any showing of necessity or desire on the part of the appellant or Michael to conceal his (appellant's) property. The appellant seems at all times to have met his obligations, at least there is no evidence that he was at any time being harassed by his creditors.

Between the years 1890 and 1894, the brothers purchased three quarter-sections of land situated in Douglas county. The appellant also during that period acquired a 120-acre tract in the same county. During the same period, Michael sent to another brother, then in business at Oakesdale, various sums of money to be loaned and otherwise invested. Out of this money, a lot in Oakesdale on which stood a hotel building was purchased. This building shortly thereafter was burned, and a new hotel building was erected in its place. The brother also purchased certain farm lands, lying in the vicinity of the town named, with the money so sent him, and other parts of it he loaned on personal securities. These transactions had their inception shortly after the appellant and Michael began their business at Spokane and were closed in November, 1895, in which month the brother at Oakesdale accounted to Michael for the money so advanced, turning over to Michael the securities he then had on hand, together with the money that then remained uninvested.

Michael Doneen died seized of the lands in the county of Whitman purchased by his brother at Oakesdale as above related. He also died seized of the lands in Douglas county, that purchased by the brothers as tenants in common as well as the tract acquired by the appellant individually. As to the remainder of his real property, one tract was acquired in 1903, another in 1905, another in 1912, and still another as late as the year 1919. The record does not disclose with definiteness when he became possessed of the securities of which he was seized at the time of his death, nor is there therein anything more than a general description of them. From this description, however, it is plain that they were of a comparatively recent origin.

It is the appellant's contention that all of this considerable property was acquired by Michael either directly from the money taken by him out of the profits of the partnership business, one-half of which was his property, or from the increment of the money so taken. There is in the record evidence which tends to support the contention. The brother at Oakesdale testified that it was his understanding that the money sent him for investment by Michael was the common property of Michael and the appellant; in fact, he testifies that he was so informed by both of the brothers when the arrangements were made under which the money was intrusted to him. It was shown that Michael engaged in no other business between the time of the dissolution of the partnership and the date of his death than the business of caring for his real property and investing and re-investing his money. There is in the record evidence of declarations made by Michael, made at intervals commencing at a time shortly after the dissolution of the partnership and ranging down to a comparatively recent period, to the effect that the ap-

pellant had a half-interest in the property of which he was possessed.

But the record is not without countervailing evidence. Concerning the land in Douglas county, there is in the evidence a deed dated September 26, 1904, reciting a consideration of $2,500, by which the appellant and his then wife conveyed to Michael all of the lands in the county named, that held by the brothers as tenants in common as well as the tract owned by the appellant individually. If the consideration recited in the several instruments of conveyance by which the land was acquired and the consideration here recited have relation to the true consideration, it is evident that the appellant received as his share from the investment in these lands a sum largely in excess of the original cost to him. The lands, prior to the date of the last mentioned deed, seem to have been left by the brothers in their natural state. Subsequent thereto, however, Michael caused them to be fenced and farmed, taking to himself the profits derived therefrom.

Concerning the Whitman county investments, there is evidence in the record tending to show that the brother at Oakesdale could be at fault in his memory of the transactions. It will be remembered that the transactions closed in the latter part of the year 1895, and that he testified concerning them some twenty-eight years later. His private account book in which he recorded the transactions is in the record. There are also therein statements of account he made during the time to Michael concerning them. These show that he invariably credited to Michael all of the sums received from him and accounted to him individually for the money. There was, as we have before stated, no reason for concealing the interests of the appellant if they existed, yet neither the book nor the accounts contain any reference to such an interest. They do contain

matters, however, which seem to us to point to another conclusion. The appellant himself during this period sent to the brother for investment at least one sum of money. This was credited to the appellant, and it was to the appellant the brother made his account. Still another circumstance which would seem to point to a mistake on the brother's part is his testimony in a cause involving certain of the land purchased from the fund advanced by Michael. The title to this land was taken jointly in the name of Michael, the name of the brother at Oakesdale, and the name of a third person. In the litigation which subsequently followed, it became material to inquire who in fact owned the land. In that litigation the brother at Oakesdale was a witness, and testified that it belonged to the three persons before referred to; no mention being made of the appellant as having an interest.

There was found among the effects of Michael a number of canceled checks, ranging in date from 1893 to 1904, drawn by Michael in favor of the appellant and indorsed by the appellant, aggregating approximately $5,000. The record does not disclose the purpose of these, but, manifestly, it is not an unfair inference that they were refunds to the appellant of his interest in the profits of the partnership which Michael had taken in excess of his share. We have said that the evidence is that Michael generally took the appellant's share of the earnings of the partnership at the division made during its continuance, but the evidence does not disclose that he uniformly did so. The sum sent by the appellant to his brother for investment must have represented at least one instance when the share went to the appellant rather than to Michael, and the evidence indicates that there must have been many more such instances. The appellant was of a social disposition, fond of his friends and of their society,

and in his prosperous days, spent his money freely. It is hardly possible that his expenses during this period were met from the stipend he drew from the business for his personal services; on the contrary, it is more than probable that the common account was drawn upon in many instances to meet his expenditures.

There can, of course, be no balancing of accounts, no way of knowing with certainty whether the sums returned by Michael to the appellant equalled the excess share of the profits of their enterprise which concededly Michael did take. But the evidence in its general trend, and certain isolated circumstances of uncontrovertible verity, indicate that both of the brothers so considered it. Michael himself, while his early calling was not such as the generality of mankind commend, was a man of probity. While of a saving disposition, there is no evidence that he was harsh or grasping when dealing with strangers to his blood, and there is evidence that in his dealings with the members of his family he was not illiberal. His character, therefore, does not presuppose that he would have so far wronged the appellant as to deny to him this great interest in the property, had the interest in fact existed.

On the part of the appellant, there are circumstances indicating that even he at times thought his interests had been fully accounted for. In 1910 he was at Goldfield, Nevada. From there he wrote a letter to Michael asking for $500 as a gift, not as an advancement out of money Michael held as belonging to him. The letter is plaintive in its tone. He explains that he had "gone broke" through a mining venture; that he had to "soak his watch and horse-shoe pin"; that his wife had instituted an action against him in the state of Washington for a divorce, and sought to have certain real property awarded to her as her sole property; that he

desired to contest her claim to the property, and needed the money to pay his obligations at Goldfield and get some clothes, so that he could "go home looking right." The complaint of the wife in her action for divorce is also in the record. In it she purports to set forth all of the property of herself and of her husband, yet she makes no mention of the property the appellant now claims to have in his brother's estate. The appellant was in financial distress at other periods of his life subsequent to the time of the dissolution of his partnership with his brother. At these times he sought the aid of his friends to obtain employment, and through their aid found places in the public service which he pursued for long periods of time. It is in evidence, also, that at one time during this period he sought and obtained aid in the way of money from another member of his family. Michael, at these times, had a large property, real as well as personal. It is almost beyond the range of credulity to believe that the appellant would have resorted to these means of eking out a livelihood if he then thought he had a half interest in this property.

As to the declarations of Michael, while they are testified to by men of known probity, are, nevertheless, to be viewed with caution and subjected to scrutiny. *Plath v. Mullins,* 87 Wash. 403, 151 Pac. 811. As we there said, no class of evidence is more subject to error or abuse. Some of them, particularly those of more recent years, on their face are capable of another construction—the construction that the testator intended to care for the appellant in his will. As to the others which cannot be so resolved, there is room, of course, based alone on the long lapse of time, to believe that the declarant was misunderstood by his hearers.

The legal principles involved need no special consideration. This court has held in a long line of cases

that parol evidence to establish a claim of this sort must be clear, cogent, and convincing.  Of this rule, the following cases are illustrative:  *Denny v. Holden,* 55 Wash. 22, 103 Pac. 1109; *Pilcher v. Lotzgesell,* 57 Wash. 471, 107 Pac. 340; *Harras v. Harras,* 60 Wash. 258, 110 Pac. 1085; *Croup v. DeMoss,* 78 Wash. 128, 138 Pac. 671; *Herriford v. Herriford,* 78 Wash. 429, 139 Pac. 212; *Womach v. Sandygren,* 96 Wash. 12, 164 Pac. 600; *Sewell v. Sewell,* 109 Wash. 252, 186 Pac. 289.

It is our opinion that the evidence of the appellant's claim does not sufficiently comply with the cited rule, and that the trial court was not in error in its conclusion.

The judgment is affirmed.

HOLCOMB, MAIN, MITCHELL, and MACKINTOSH, JJ., concur.